UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, §<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>UNIFIED HEALTH, LLC, a Delaware Limited §<br>Liability Company §<br>§<br>Defendants. §<br>§ | EP-23-cv-00375-KC |

PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Brandon Callier with his First Amended Complaint and will show as follows:

**PARTIES**

1.      Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant UNIFIED HEALTH, LLC ("Unified") is a limited liability company organized and existing under the laws of Delaware.  Unified can be served via registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

3.      Non-named Party Integrity Marketing Group, LLC dba PlanEnroll ("PlanEnroll") is a lead generation company that created a false lead and sold it to Defendant Unified.  Defendant Unified made libelous accusations against Plaintiff based on PlanEnroll's manufactured lead. Plaintiff plans on filing a lawsuit for libel and defamation of character if PlanEnroll does not retract its libelous accusations against Plaintiff.

1

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Counts I and II under 28 U.S.C § 1331,

because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

*See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts

have federal question jurisdiction over private actions brought under the TCPA).

5.      The Court has supplemental jurisdiction over Count III under 28 U.S.C § 1367.

6.      This Court has specific personal jurisdiction over Defendant Unified because Defendant

Unified purposefully availed itself to the State of Texas and to this District, and there is a

sufficient relationship between Defendant Unified's purposeful contacts with Texas and the

litigation:

> a.  Defendant Unified targets Texas when marketing debt elimination services and
>     regularly conducts business in this District, including telephone solicitation.
>
> b.  Unified called Plaintiff's El Paso-area phone number (with area code 915) to
>     generate leads for Unified's Medicare insurance services.
>
> c.  Unified placed the calls to Plaintiff utilizing a Texas area code (210).
>
> d.  These calls to Texas injured Plaintiff in Texas, creating a causal link among
>     Defendant Unified, the forum, and the litigation that exceeds the non-causal
>     affiliation that is sufficient to support personal specific jurisdiction.  *See Ford*
>     *Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021

7.      Venue is proper under 28 U.S.C. § 1391(b)(2).

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

12.      The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17.    The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.    Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.    A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

24.    Plaintiff personally successfully registered his phone number ending in 4604 on the National Do-Not-Call Registry ("DNC") in December 2007.

25.    Plaintiff was registered on the National DNC at all times relevant to this Complaint.

26.    Plaintiff received a series of phone calls from phone number 210-762-4020 soliciting Medicare insurance services.

27.    Plaintiff filed his Original Complaint on October 11, 2023.

28.    Defendant was served with the Complaint and summons on October 13, 2023.

29.    Defendant filed a Motion to Dismiss Plaintiff's Original Complaint on December 4, 2023.

30.    Plaintiff files this First Amended Complaint to fix a couple of factual errors, add additional phone calls, and add pertinent information vital to his claims.

27.    The phone calls at issue in this Complaint are listed in Table A of this Complaint.

28.    On July 28, 2023, Plaintiff received a phone call displaying 210-762-4020 on his caller identification.  Plaintiff did not answer the phone call.

29.    On August 11, 2023, Plaintiff received a phone call displaying 210-762-4020 on Plaintiff's caller identification.  The phone call lasted approximately three (3) seconds before dropping.  Exhibit A.

30.    On August 25, 2023, Plaintiff received a phone call displaying 210-762-4020 on his caller identification.  Plaintiff answered the phone call.  Exhibit A.

31.    Plaintiff informed the telemarketer during the phone call in paragraph 30 that he did not have Medicare and to not call again.  This was DNC request # 1.

32.    On September 15, 2023, Plaintiff received a phone call displaying 210-762-4020 on his caller identification.  Plaintiff answered the phone call.  Exhibit B.

33.    Plaintiff informed the telemarketer during the phone call in paragraph 32 that he did not have Medicare and to not call again.  This was DNC request # 2.

34.    On September 27, 2023, at 9:56 AM Plaintiff received a phone call displaying 210-762-4020 on his caller identification.  Plaintiff answered the phone call.  Exhibit C.

35.    Plaintiff informed the telemarketer during the phone call in paragraph 32 that he did not have Medicare and to not call again.  This was DNC request # 3.

36.    On September 27, 2023, at 9:56 AM Plaintiff received another phone call immediately after hanging up the phone call in paragraph 34.  The phone call displayed 210-762-4020 on the caller identification.  Plaintiff answered the phone call.  Exhibit C.

37.     Plaintiff informed the telemarketer in paragraph 36 that he did not have Medicare, asked to not be called again and then hung up the phone.  This was DNC request #4.

38.     On September 27, 2023, Plaintiff was curious about who was repeatedly calling Plaintiff and ignoring his do-not-call requests.  Plaintiff placed an outgoing call phone number 210-762-4020 from his cell phone 915-383-4604 to investigate.  Exhibit C.

39.     Plaintiff spoke with "Azelis" who informed Plaintiff that the company website was https://www.unifiedhealth.com.

40.     UnifiedHealth.com belongs to Unified Health, LLC.

41.     On October 4, 2023, Plaintiff received another phone call from 210-762-4020.  Plaintiff answered the phone call.  Exhibit D.

42.     Plaintiff informed the telemarketer in Paragraph 41 that he was not interested and disconnected the call.

43.     On October 5, 2023, Plaintiff sent a demand letter and DNC request to Defendant at Hunsaker@unitedhealth.com.  Plaintiff has email receipt tracking.  This email was read 111 times.

44.     On October 28, 2023, Plaintiff received two phone calls from Defendant.  Exhibit E.

45.     The phone calls in paragraph 44 came more than two months after Plaintiff delivered his first DNC request.  The phone calls in paragraph 44 came more than three weeks after Plaintiff had delivered a DNC request to Whittney Hunsaker ("Hunsaker").

46.     Whittney Hunsaker took no steps to stop Defendant from calling Plaintiff as the email in paragraph 43 was read 111 times and yet Plaintiff was called twice on October 28, 2023.

47.     On December 4, 2023, Defendant submitted a "Declaration of Whittney Hunsaker" in which Hunsaker claimed under penalty of perjury that none of the phone calls in Plaintiff's Original Complaint were answered.  Dkt. 10. Affidavit.

48.     The "Declaration of Whittney Hunsaker" is directly contradicted by Plaintiff's Exhibit A, Exhibit B, Exhibit C, and Exhibit D.  Exhibits A-D are true and correct copies of Plaintiff Verizon phone bills, and the originals can be obtained directly from Verizon.

49.     Hunsaker submitted an objectively false affidavit when she claimed that none of the phone calls in Plaintiff's Original Complaint were answered.  This is part of a pattern of lies, distortions, and outright fabrications designed to smear Plaintiff.

50.     Each of the phone calls, in this case, displayed "SILVERSCRIPT" on Plaintiff's caller identification.

51.     Table A below displays calls made to Plaintiff by Defendant Unified.

**TABLE A**

| Number: | Date: | Time: | Caller ID: | Notes: |
|---|---|---|---|---|
| 1. | 07/28/2023 | 12:53 PM | 210-762-4020 | Missed call |
| 2. | 08/11/2023 | 12:08 PM | 210-762-4020 | 3 second call. Call dropped |
| 3. | 08/25/2023 | 11:31 AM | 210-762-4020 | Told them I did not have Medicare and not to call back |
| 4. | 09/15/2023 | 2:36 PM | 210-762-4020 | Told them I did not have Medicare and not to call back. |
| 5. | 09/27/2023 | 9:59 AM | 210-762-4020 | Told them I did not have Medicare and not to call back. |
| 6. | 09/27/2023 | 9:59 AM | 210-762-4020 | Called right back.  Hung up the phone. |
| 7. | 10/04/2023 | | 210-762-4020 | DNC Request |
| 8. | 10/28/2023 | 8:38 AM | 210-762-4020 | Missed Call |

| 9. | 10/28/2023 | 8:39 AM | 210-762-4020 | Missed Call |
|----|------------|---------|--------------|-------------|

52.    Defendants Unified participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful telemarketer's calls while knowing facts that required a reasonable person to investigate further and approved and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful solicitation calls.

53.    On December 6, 2023, Plaintiff asked Defendant Unfied for a copy of their Internal Do Not Call Policy through their counsel.

54.    On December 7, 2023, Defendant's counsel responded to Plaintiff and declined to give Plaintiff a copy of Defendant's Internal Do Not Call Policy.

55.    On December 7, 2023, Plaintiff again contacted Defendant's Counsel and asked for a copy of Defendant's Internal Do Not Call Policy.  Plaintiff reminded Counsel that 47 C.F.R. § 64.1200(d)(1) states, "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand," and reiterated his request for their internal DNC policy.

56.    Defendant has not provided Plaintiff with a copy of their internal DNC policy.

57.    Through information and belief, every call was placed without the maintenance of an internal do-not-call policy. Every call was placed without training their agents/employees on the use of an internal do-not-call policy.

58.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

59.    No emergency necessitated the calls.

60.    Through information and belief, Defendant Unified did not have a written do-not-call policy while it was sending Plaintiff unsolicited calls.

61.    Through information and belief, Defendant Unified did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

**VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101**

62.    Defendant initiated the phone calls alleged herein and is a "seller" under the Texas Business and Commerce Code because it makes telephone solicitation on its own behalf and called Plaintiff in this case.

63.    Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation."

64.    The actions of Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

65.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302."  Tex. Bus. & Com. Code § 302.303.

66.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

67.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

68.    Under Texas Business and Commerce Code § 302.302(a) Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

69.    On December 5, 2023, Plaintiff visited the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp. Plaintiff performed a search of all initial registrations and did not find a valid registration for Defendant.

70.    On December 5, 2023, Plaintiff visited the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp. Plaintiff performed a search of all closed registrations and did not find a closed registration for Defendant.

71.    On December 5, 2023, Plaintiff visited the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp. Plaintiff performed a search of all pending registrations and did not find a valid registration for Defendant.

72.    On December 5, 2023, Plaintiff visited the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp. Plaintiff performed a search of all renewal registrations and did not find a valid registration for Defendant.

73.    On December 5, 2023, Plaintiff visited the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp. Plaintiff performed a search of all suspense registrations and did not find a valid registration for Defendant.

74.    Defendant has never held a Texas Telephone solicitation registration.

75.    Defendant has never applied for a Texas Telephone solicitation registration.

76.    Defendant placed every telephone call in this Complaint without a valid Texas telephone solicitation registration.

77.    Each phone call Plaintiff received in this First Amended Complaint displayed "Silverscript" on the caller identification.

78.    Defendant is not "Silverscript" and Plaintiff was confused as to the true identity of the caller.  This was an intentionally deceptive trade practice as Defendant intentionally transmitted confusing caller identification information to conceal their identity.

79.    Plaintiff relied on the caller identification intentionally transmitted by Defendant to know who was calling to solicit Plaintiff.

80.    Defendant intentionally mispresented their identity when it was making nonregistered solicitation phone calls to Plaintiff.

81.    Plaintiff was confused, frustrated, and irritated by Defendant's intentional false caller identification transmission.

82.    Plaintiff was annoyed, confused, and suffered mental anguish, frustration, and irritation. Plaintiff felt harassed as a direct result of Defendant ignoring his DNC requests.  This includes the multiple phone calls that came AFTER Plaintiff had alerted Hunsaker, filed his Original Complaint, and served Defendant with his Complaint and summons.

## PLAINTIFF DID NOT MANUFACTURE A TCPA CLAIM

83.    Defendant's MTD filed on December 4, 2023, included accusations that Plaintiff manufactured a TCPA claim by going to the website https://www.planenroll.com and submitting a request for information.

84.    Neither Plaintiff nor anybody associated with Plaintiff ever visited the website https://www.planenroll.com at any time, and no one associated with Plaintiff ever submitted a request for information at https://www.planenroll.com. Exhibit F, Exhibit G, and Exhibit H.

85.    Integrity Marketing Group, LLC, doing business as PlanEnroll ("PlanEnroll") owns and operates the website https://www.planenroll.com.

86.    PlanEnroll created a manufactured lead on or about July 13, 2023, and sold it to Defendant Unified.  The manufactured lead contained Plaintiff's father Elston Tatum's name and Plaintiff's phone number.

87.    Defendant called Plaintiff as a result of the lead PlanEnroll falsely created in order to make money selling a bogus lead.

88.    The webpage https://www.planenroll.com/privacy-policy does not list Defendant Unified as a possible recipient of any requests for information that are generated on the PlanEnroll website.  Exhibit I.

89.    The webpage https://www.planenroll.com/Terms-of-Service does not list Defendant Unified as a possible recipient of any requests for information that are generated on the PlanEnroll website.  Exhibit J.

90.    Even if Plaintiff had requested information from PlanEnroll (he did not) this request for information WOULD NOT have been extended to Defendant Unified or authorized Defendant Unified to place ANY phone calls to Plaintiff.

91.    Even had Plaintiff requested information on this website (he did not) the authorization to call Plaintiff's cell phone would have been revoked when Plaintiff issued a DNC request on August 25, 2023.

92.    Plaintiff issued further DNC requests on September 15, 2023, September 27, 2023, and October 4, 2023, and when Defendant was served with the summons on October 11, 2023.

93.    Defendant cannot police itself and continued to call Plaintiff AFTER Hunsaker read Plaintiff's DNC email 111 times and AFTER Defendant was served with Plaintiff's Original Complaint and summons.

94.     Defendant is required to honor DNC requests.  Defendant has no legal justification or defense as to why it ignored multiple DNC requests from Plaintiff and has resorted to a character assassination campaign, wild conspiracy theories, and manufactured "requests for information" to justify why Defendant continued to call Plaintiff after repeated DNC requests.

95.     Defendant has no legal justification for why it called Plaintiff repeatedly after receiving at least five (5) DNC requests and being served with the Complaint and summons.

96.     Plaintiff's father Elston Tatum is 68 years old and does not use the internet, does not have a home computer, and did not request any information online from PlanEnroll or Unified Health. An examination of the records will show that PlanEnroll and Unified Health fabricated this assertion.

97.     Plaintiff immediately gave Unified Health DNC requests.  Had his initial DNC request been honored Plaintiff would not have been able to bring a TCPA claim.  It defies logic that Plaintiff would manufacture a claim by submitting a request for information and then immediately give repeated DNC requests to stop those calls from happening.

**PLAINTIFF DID NOT CONSPIRE WITH CARLTON TATUM OR ELSTON TATUM**

98.     In his Original Complaint, Plaintiff confused this Medicare sales company with another Medicare sales company and mistakenly stated that Plaintiff had a coworker who has Medicare call Defendant Unified at phone number 210-762-4020."  Plaintiff's Original Complaint, ¶ 31.

99.      Defendant took the mistake in paragraph 98 and somehow extrapolated that to mean Plaintiff conspired with Carlton Tatum and Elston Tatum to manufacture a TCPA claim. Defendant accused Carlton Tatum of making the phone call referenced in paragraph 98.

100.    Defendant had absolutely no basis in fact to make up a wild conspiracy theory about Plaintiff conspiring with Carlton Tatum and Elston Tatum.

101.    Plaintiff's call records show the phone call to 210-762-4020 came from 915-383-4604. 915-383-4604 is Plaintiff's phone number.  That did not keep Defendant from making up a wild outlandish conspiracy theory designed to besmirch Plaintiff's character.

102.    Carlton Tatum is a schoolteacher with Mansfield Independent School District in Mansfield, Texas.  Carlton Tatum was more than 600 miles away from Plaintiff when he supposedly made the phone call Defendant accused him of making from Plaintiff's phone.

103.    Defendant has a recording of the incoming September 27, 2023, in which Plaintiff says it is "Brandon."  Brandon Callier is not Carlton Tatum.

104.    Defendant is not concerned with the facts of the case.  Instead, Defendant is more interested in attempting to smear Plaintiff in an effort to cover up their outrageous behavior.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

105.    Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

106.    Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

107.    Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

108.    Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

## Plaintiff's Cell Phone is a Residential Number

109.    The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his

residence and has not done so for at least 17 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose,

## I.   FIRST CLAIM FOR RELIEF

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. § 227(c) et seq.)

110.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-109.

111.    Defendant called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

112.    Plaintiff was statutorily damaged at least eight (8) times under 47 U.S.C. § 227(c)(3)(F) by Defendant by the telephone calls described above, in the amount of $500.00 per call.

113.    Plaintiff was further statutorily damaged because Defendant willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

114.    As a result of Defendant's violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

115.    Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendant and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### Violations of Texas Business and Commerce Code 302.101
### Failure to Obtain a Telephone Solicitation Registration Certificate

116.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-109.

117.    Defendant and/or their affiliates or agents made at least eight (8) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

118.    As a result of Defendant and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

119.    As a result of Defendant and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code 302.302(d).

### III.    THIRD CLAIM FOR RELIEF

### (Telemarketing without mandated safeguards, 47 C.F.R. § 64.1200(d))

120.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-109.

121.    The foregoing acts and omissions of Defendant constitute multiple violations of FCC regulations of FCC regulations by making telemarketing solicitations despite:

a.    A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1).

b.    Training for individuals involved in telemarketing on the existence and use of a do-

not-call list, in violation of 47 C.F.R. § 64.1200(d)(2).

122.    Plaintiff is entitled to an award of $500 in damages for each such violation.  47 U.S.C. §

227(c)(5)(B).

123.    Plaintiff is entitled to an award of up to $1500 in damages for each knowing or willful

violation.  47 U.S.C. § 227(c)(5).

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants

jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to

conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and

Texas state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the

unlawful conduct set forth herein;

D.    An award of $1500 per call in statutory damages arising from the TCPA intentional

violations jointly and severally against the corporation for eight (8) calls.

E.    An award of $5,000 in statutory damages arising from violations of the Texas Business

and Commerce code 302.101 intentional violations jointly and severally against the corporation

for eight (8) calls.

F.    An award to Plaintiff of damages, as allowed by law under the TCPA;

G.    An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

H.    Such further relief as the Court deems necessary, just, and proper.

Dated:  December 13, 2023,                    Respectfully submitted,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
1490 A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com

## I.    **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: December 13, 2023,

*/s/ Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
1490 A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com



**Account:** 272495195-00001
**Invoice:** 9611339567
**Billing period:** Jul 26 - Aug 25, 2023

## Talk activity (cont.)

**915-383-4604**
**GALAXY S22 ULTRA**



| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Aug 11 | 12:06 PM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | | | |



**Account:** 272495195-00001
**Invoice:** 9611339567
**Billing period:** Jul 26 - Aug 25, 2023

## Talk activity (cont.)

**915-383-4604**
**GALAXY S22 ULTRA**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Aug 25 | 11:28 AM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | | | |



**Account:** 272495195-00001
**Invoice:** 9619319797
**Billing period:** Aug 26 - Sep 25, 2023

## Talk activity (cont.)

██████████
**915-383-4604**
**GALAXY S22 ULTRA**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ███ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ███ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ███ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |
| Sep 15 | 2:34 PM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | █ | █ | █ |
| ██ | ██ | ██ | ██ | ██ | █ | █ | █ | █ |

**verizon**✓

**Account:** 272495195-00001
**Invoice:** 9627302100
**Billing period:** Sep 26 - Oct 25, 2023

## Talk activity

███████

**915-383-4604**
**GALAXY S22 ULTRA**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | █████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | █████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | █████ | █████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| Sep 27 | 9:56 AM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | | | |
| Sep 27 | 9:56 AM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | | | |
| Sep 27 | 9:57 AM | 210 762 4020 | El Paso, TX | Sanantonio, TX | 3 | | | |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |
| ███ | ███ | ██████ | ██████ | ████████ | █ | █ | █ | █ |

21



## Talk activity (cont.)

████████
**915-383-4604**
**GALAXY S22 ULTRA**

| Date | Time | Number | Origination | Destination | Min. | Airtime Charges | LD/Other Charges | Total |
|------|------|--------|-------------|-------------|------|-----------------|------------------|-------|
| Oct 4 | 5:57 PM | 210 762 4020 | El Paso, TX | Incoming, CL | 1 | | | |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | 1 | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | 1 | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | 1 | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |
| ████ | ████ | ████ | ████ | ████ | █ | █ | █ | █ |



## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

_____

|  |  |  |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | EP-23-cv-00375-KC |
| | § | |
| **UNIFIED HEALTH, LLC**, a Delaware Limited | § | |
| Liability Company | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

_____

## AFFIDAVIT OF BRANDON CALLIER IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT UNIFIED HEALTH LLC'S MOTION TO DISMISS

I, Brandon Callier, declare as follows pursuant to 28 U.S.C. § 1746:

1. I have never been to the website https://www.planenroll.com.

2. I did not visit https://www.planenroll.com on July 13, 2023.

3. I did not submit an online request for information at https://www.planenroll.com.

4. I have never requested information from PlanEnroll or United Health, LLC (United Health.)

5. PlanEnroll has conspired with Unified Health to produce a fraudulent opt-in in an attempt to smear my name and reputation.

6. Unified Health produced a declaration of Whitney Hunsaker stating that "according to Unified Health's records, no calls were answered." Declaration of Hunsaker ¶7. This is directly contradicted by call records obtained from Verizon Wireless.

7. Exhibit A is a true and correct copy of pages 31 and 37 of my August 2023 Verizon cell phone bill offered in contradiction of the Declaration of Whittney Hunsaker.

8.  Exhibit B is a true and correct copy of page 31 of my September 2023 Verizon cell phone bill offered in contradiction of the Declaration of Whittney Hunsaker.

9.  Exhibit C is a true and correct copy of page 21 of my September 2023 Verizon cell phone bill offered in contradiction of the Declaration of Whittney Hunsaker.

10. Exhibit D is a true and correct copy of page 25 of my October 2023 Verizon cell phone bill offered in contradiction of the Declaration of Whittney Hunsaker.

11. On August 11, 2023, at approximately 12:06 am, I answered a phone call that displayed 210-762-4020 on my caller identification.  The call lasted approximately 3 seconds before dropping.  Exhibit A.  This is a direct contradiction to Hunsaker's declaration that no calls were answered.

12. On August 25, 2023, at approximately 11:28 am, I answered a phone call that displayed 210-762-4020 on my caller identification.  Exhibit A.  This is in direct contradiction to Hunsaker's declaration that no calls were answered.

13. On September 15, 2023, at approximately 2:34 pm, I answered a phone call that Displayed 210-762-4020 on my caller identification.  Exhibit B.  This is in direct contradiction to Hunsaker's declaration that no calls were answered.

14. On September 27, 2023, at approximately 9:56 am and 9:56 am, I received two phone calls that displayed 210-762-4020 on my caller identification.  Exhibit C.  This is in direct contradiction to Hunsaker's declaration that no calls were answered.

15. Elston Tatum is my Father.

16. I have been separated from my wife for more than six months and filed for divorce in September 2023.

17. I no longer live at 6336 Franklin Trail Drive, El Paso, Texas 79912.

18. I am in the process of moving to North Carolina and expect to move there once my divorce is complete and the 2024 tax season is complete.

19. I maintain a rental residence in North Carolina as I await the finalization of my divorce.

20. I operate a tax preparation and bookkeeping business called Aero Tax Services in El Paso, Texas.

21. I have three employees who work with me at my Aero Tax Services location in El Paso, Texas.

22. Carlton Tatum is my brother and also operates a tax preparation and bookkeeping business called Aero Tax Services, in Cedar Hill, Texas.

23. Carlton Tatum has never used my cell phone 915-383-4604 for any purpose at any time.

24. I am over the age of 18 years of age, of sound mind, and otherwise competent to make this declaration.  If called as a witness, I would and could competently testify to the foregoing, which is within my personal knowledge or based upon information that I gathered within the course of my investigation into the facts of this Complaint.

I declare under penalty of perjury that the foregoing is true and correct. Executed on the 13th day of December, 2023.

_____
Brandon Callier

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| BRANDON CALLIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-23-cv-00375-KC |
| | § | |
| UNIFIED HEALTH, LLC, a Delaware Limited Liability Company | § | |
| | § | |
| Defendant. | § | |
| | § | |

## AFFIDAVIT OF CARLTON TATUM

I, Brandon Callier, declare as follows pursuant to 28 U.S.C. § 1746:

1.  I have never been to the website https://www.planenroll.com at any point in time.

2.  I did not visit planenroll.com on July 13, 2023.

3.  I did not submit an online request for information at https://www.planenroll.com.

4.  I did not call Unified Health on September 27, 2023, or at any time before, or after, September 27, 2023.

5.  I have never spoken to any person associated with United Health or PlanEnroll at any point in time.

6.  I maintain a business telephone number of 469-454-6418.  I did not use this telephone number to contact Unified Health, LLC, or PlanEnroll at any time.

7.  I maintain a personal cell phone number of 832-316-8319.  I did not use this telephone number to contact Unified Health, LLC, or PlanEnroll at any time.

8.  The phone numbers in paragraphs 5 and 6 are the only two phone numbers I maintain.

9.  An examination of the call records of Unified Health, LLC and Carlton Tatum will show that at no point in time did I ever place any phone calls to Unified Health LLC.

10. I had never heard of Unified Health, LLC or PlanEnroll before Unified Health accused me of conspiring with Brandon Callier to create a TCPA claim in United Health's Motion to Dismiss.

11. Brandon Callier is my oldest brother.

12. I have been a schoolteacher at Mansfield Independent School District for three years.  I was in class teaching when the purported phone call to Defendant Unified Health was placed on September 27, 2023.  The phone call was placed from phone number 915-383-4604 as confirmed by Brandon Callier's Verizon phone records.  I was more than 600 miles away at the time and not have possibly placed the phone call as alleged by Whitney Hunsaker and Attorney Rachel Solomon in Hunsaker's Declaration.

13. I also operate a tax preparation and bookkeeping business called Aero Tax Services in Cedar Hill, Texas.

14. I am over the age of 18 years of age, of sound mind, and otherwise competent to make this declaration.  If called as a witness, I would and could competently testify to the foregoing, which is within my personal knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Arlington, Texas on December 9, 2023

*Carlton Tatum*
Carlton Tatum

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

_____

|  |  |  |
|---|---|---|
| **BRANDON CALLIER,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-23-cv-00375-KC** |
| | § | |
| **UNIFIED HEALTH, LLC**, a Delaware Limited | § | |
| Liability Company | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

_____

### <u>AFFIDAVIT OF ELSTON TATUM</u>

I, Elston Tatum, declare as follows pursuant to 28 U.S.C. § 1746:

1. I am the father of Brandon Callier and am listed as such on his birth certificate.

2. I have never been to the website https://www.planenroll.com

3. I did not visit planenroll.com on July 13, 2023, or at any point in time.

4. I did not submit an online request for information at https://www.planenroll.com.

5. I do not own a personal computer, tablet, or laptop, and only possess a cell phone with which to access the internet.  I did not use my cell phone to access the website https://www.planenroll.com.

6. I did not call Unified Health on September 27, 2023, or at any time before, or after, September 27, 2023.

7. I have never spoken to any person associated with United Health or PlanEnroll at any point in time.

8. My personal cell phone, and only phone number, is 903-747-7014.  I did not use this phone number to contact Unified Health, LLC, or PlanEnroll at any point in time.

1

9.   I have never used phone number 915-383-4604 in any capacity and did not submit an online request with PlanEnroll on July 13, 2023, listing 915-383-4604 as my phone number.

10.   I have never conspired with Brandon Callier or been asked by Brandon Callier to assist in creating any TCPA claims, or for any other reason.

11. I have never made any phone calls, made any requests for information, or filled out any forms in furtherance of any TCPA-related claims, or for any other reason, made by Brandon Callier.

12. I am over the age of 18 years of age, of sound mind, and otherwise competent to make this declaration.  If called as a witness, I would and could competently testify to the foregoing, which is within my personal knowledge.

I declare under penalty of perjury under the laws of the State of Texas and under the laws of the United States that the foregoing is true and correct.

Executed in Tyler, Texas on December 9, 2023

*Elston Tatum*
Elston Tatum



# Privacy Policy

Date last updated: 05/24/2023

This Privacy Policy describes the collection, use, and disclosure practices with respect to PlanEnroll, hosted at planenroll.com (the "Platform"). This Privacy Policy refers to visitors to and users of the Platform as "you". The Platform is operated by Integrity Marketing Group (the "Company" or "we"). The Company separately maintains a privacy policy that covers all of its collection, use, and disclosure of information here. The purpose of the Platform is to serve as the one-stop resource about Medicare plans for individuals who are interested in Medicare insurance products.

This Privacy Policy uses the term "Personal Information" to describe information that identifies, relates to, describes, is reasonably capable of being associated with, or could reasonably be linked, directly or indirectly, with a particular consumer or household.

## HIPAA

Because we facilitate the sale of a diverse range of insurance products, our processing of some information on behalf of our agents may fall under the Health Insurance Portability and Accountability Act ("HIPAA"). Specifically, we act as a Business Associate (as defined by HIPAA) when we receive Protected Health Information about you(including your name, contact information, date, street address, Medicare number, information about current Medicare

Need help making a decision?



policy, ethnicity and race, and other information) in the course of your application to a health plan carrier. For more information about how PHI is used and disclosed, please review the applicable health plan's Notice of Privacy Practices.

This Privacy Policy applies to personal information that is not covered by HIPAA.

## INFORMATION COLLECTED FOR TEXTING PROGRAM

Any information that we collect when you opt into receiving SMS and MMS text messages from us is used solely for the management of such texting communications program. We do not disclose such information to any entities other than our subsidiaries. We also do not transfer your consent to be contacted via the texting program to any other entity. The applicable terms for your participation in the texting program are available here.

## PERSONAL INFORMATION WE COLLECT

The table below details the categories of Personal Information that we collect or obtain through the operation of the Platform. The Personal Information described below may be collected about your spouse as well, if you provide such information to us.

| CATEGORY | EXAMPLES AND SOURCES |
| --- | --- |
| Contact information | We collect your name, phone number, postal address, and email address when you submit a form requesting to be contacted or when you submit an application for enrollment in an insurance product. |
| Login credentials | This includes username and password* if you choose to create a profile with us. |
| Health information | We collect su... information a... and healthcare, such as the |

Need help making a decision?



| CATEGORY | EXAMPLES AND SOURCES |
|---|---|
| | medication you take, your preferred pharmacy, and your preferred clinician, when you provide such information to us on the Platform. This information is used to identify appropriate Medicare plans for you. |
| Internet or other similar network activity | Automatically-collected information on your interaction with the Platform. This may include your browsing history (including the site you came from before visiting our website and the site you went to after leaving our website), duration of browsing session, device ID, and IP address. |
| Audio, electronic, or visual information | We may have access to video snippets of users' online activity, such as clicks and scrolling, that show how users provide consent to be contacted or interact with our Platform. We may also have audio recordings of your conversations with our customer service, sales, or other Company representatives in connection to your inquiries about the Platform. |
| Geolocation data | We collect geolocation* from users to ensure the security and integrity of the Platform and provide our services. |
| Commercial information | We collect information about the products may interest requested by you. |

Need help making a decision?



| CATEGORY | EXAMPLES AND SOURCES |
|---|---|
| Professional or employment-related information | We collect information about your employment when you provide it to us in the course of submitting an application for enrollment in an insurance product. |

Types of Personal Information marked with an asterisk (*) may be considered "sensitive" personal information according to some state laws.

We do not collect biometric information.

We intend to keep the above categories of Personal Information for as long as reasonably necessary to achieve the business purposes for which they were collected.

## USE OF PERSONAL INFORMATION

We may use or disclose the Personal Information that we collect for one or more of the following purposes:

- Operate the Platform, including finding appropriate insurance plans and processing your plan enrollment requests;

- Communicate with you regarding the Platform;

- Connect you with a licensed agent at your request;

- Address your inquiries;

- Process transactions;

- Tailor the content and information that we may send or display to you;

- Analyze use of our products and services;

- Develop new products and services;

- Comply with legal obligations;  Need help making a decision?

- Protect our rights, property, and safety or the and safety of others;



- Evaluate or conduct a merger, divestiture, restructuring, reorganization, dissolution, or other sale or transfer of some or all of our assets, whether as a going concern or as part of bankruptcy, liquidation, or similar proceeding, in which personal information held by us about our customers is among the assets transferred. You hereby consent to such transfers and we may assign and transfer all of the rights, benefits, duties, and obligations of this Privacy Policy, under the circumstances described in this paragraph.

From time to time, we may contact you via personal phone call, email, and mail, for the purpose of providing announcements, promotional offers, alerts, confirmations, surveys, and/or other general communication. If you would like to stop receiving marketing or promotional communications via email or mail from us, you may opt out of such communications by contacting us at the toll-free number or email address listed below.

We may also contact you via text if you provide your consent to receive text communications on a texting consent page.

## SHARING PERSONAL INFORMATION

We may disclose all categories of Personal Information described above in "Personal Information We Collect" to the third parties listed below for the purpose of facilitating the sale of insurance products to individuals who are interested in purchasing such products.

- **With Our Service Providers.** We may share Personal Information about you with third parties who perform services for us or on our behalf. For example, this may include payment processors or other operating systems or platforms that help us run our services.

- **With Our Business Partners.** We may share Personal Information (but not Personal Information that you provide when opting into text messaging communications) with the independent licensed agents who are contracted to sell insurance policies with the same carriers as us, and business partners that assist us with analytics, marketing, and advertising.

Need help making a decision?



- **With Law Enforcement, Government Agencies, or Parties to a Legal Proceeding.** We may share Personal Information with such entities to comply with the law or assist in law enforcement.

- **With Our Independent Agents and Advisors.** Agents and advisors have access to Personal Information that is provided by you when you request information regarding insurance products.

- **With Data Analytics Providers and Advertising Service Providers.** Third-party data analytics providers may collect Personal Information about users over time and across different websites, applications, and devices for the purposes of targeted advertising. These providers may collect Personal Information, specifically internet or other similar network activity information, social media information, and/or commercial information in this manner on our Platform. For more information on these third parties, please see the below "Cookie Policy."

  We partner with these third parties to tailor and customize our advertising to Users. The practice of targeted advertising may be considered a "sale" of Personal Information under some state laws. For more information about your choices related to this practice, please see "Rights Regarding Personal Information," below.

## COOKIE POLICY

The website on which the Platform is hosted may use cookies, pixel tags, web beacons, and similar technologies to track and enhance user experience. Users' web browser places cookies on their hard drive for record-keeping purposes and sometimes to track information about them. Cookies can also enable us to track and target the interests of our users to enhance their experience on our website. We may use the following types of cookies: advertising and analytics and social media.

Users may choose to set their web browser to refuse cookies or to alert you when cookies are being sent. If they do so, note that some parts of the Platform may not function properly. O recognize "Do Not Track" signals, however it may out preference signals, such as the Global Privacy

Need help making a decision?



You may set such a signal through your browser or browser extension.

## CHILDREN UNDER THE AGE OF 16

The Platform is not intended for children under 16 years of age. We do not collect information about individuals under the age of 16. No one under age 16 may provide any information through the Platform. We do not knowingly collect personal information from children under 16. If you are under 16, do not use or provide any information through the Platform. If we learn we have collected or received personal information from a child under 16 without verification of parental consent, we will delete that information. If you believe we might have any information from or about a child under 16, please contact us.

## RIGHTS REGARDING PERSONAL INFORMATION

You may have the following rights ("Data Subject Rights") with respect to the Personal Information that we collect or process about you. These rights differ depending on where you live (including specifically in California, Virginia, Colorado, Connecticut, and Utah), but we will endeavor to respect these rights regardless of your place of residence. Please note that we reserve the right to honor your Data Subject Rights as required by applicable law.

- **Right to Access and Obtain a Copy:** If you ask us, we will confirm whether we are processing your Personal Information and, if so, provide you with a copy of all Personal information you are lawfully entitled to receive along with certain other details. In addition, you may request to know the types of third parties with whom we share your Personal Information, and the categories of Personal Information we share with them.

- **Right to Amend:** If you believe your Personal Information is inaccurate or incomplete, you are entitled to request that we correct or complete it. If you ask us, and where possible and lawful to do so, we will also tell you with whom we shared your Personal Information so you can contact them directly.

- **Right to Delete:** You may request that we del Personal Information. If we shared your Pers

Need help making a decision?



with others, we will tell them about the erasure as directed by
law.

- **Right to Restrict Processing:** You may ask us to restrict or
  'block' the processing of your Personal Information in certain
  circumstances, such as if we process Personal Information that
  is considered "sensitive" under applicable state laws or engage
  in automated decision-making.

- **Right to Opt Out of Targeted Advertising:** Targeted advertising is
  the practice of serving you tailored advertisements based your
  Personal Information gathered across other businesses,
  websites, applications, or services. You have the right to opt out
  of this practice.

- **Right to Opt Out of sales:** Some states consider targeted
  adverting a "sale" of Personal Information. You may request that
  we not "sell" your Personal Information.

- **Right to Non-discrimination:** We will not discriminate against
  you for exercising these rights, but we may charge a reasonable
  fee as permitted by law in fulfilling these rights, such as if you
  request multiple copies of your Personal Information.

If you or your authorized agent wish to exercise any of these Data
Subject Rights, please use the following form. Before responding to
your request to exercise Data Subject Rights, we may require
additional information from you to verify your identity or clarify your
specific request. We will try to comply with your request as soon as
reasonably practicable and in compliance with applicable law. Where
appropriate, we will work with third parties in order to fulfil your
request. If we deny any of the above rights, you may have the right to
appeal the decision with us by submitting an appeal request to us
using the contact information listed below. Additionally, you may have
the ability to contact your state's attorney general if you have
concerns about the results of the appeal.

## ADDITIONAL NOTICE TO CALIFORNIA RESIDENTS

The following disclosures are made in compliance with the California
Consumer Privacy Act (CCPA), as amended. In the we have collected the Personal Information described
disclosed it to the third parties listed under the se

Need help making a
decision?



Personal Information." This information falls into the following categories of Personal Information under the CCPA:

- Identifiers
- Categories of Personal Information described in section 1798.80(e) of the California civil code
- Characteristics of protected classifications under California or federal law
- Commercial information
- Geolocation information
- Internet or electronic network activity information
- Employment information
- Sensitive personal information (health information, account log-in credentials, and precise geolocation)

Because we engage in targeted advertising, we may "sell" Users' Personal Information identified above (but not any information collected for text campaigns) as defined under some state laws, including California. In the last 12 months, we may have "sold" or "shared" some or all of the above categories of your Personal Information with advertising networks, data analytics vendors, and insurance agents or their representatives. If you wish to opt out of this use of your information, click here: Do Not Sell or Share My Personal Information.

We do not use or disclose "sensitive" Personal Information, listed above, for purposes other than those specified in Cal. Code Regs. tit. 11, § 7027(m).

## ADDITIONAL NOTICE TO NEVADA RESIDENTS

Nevada law permits Nevada residents to request that we not sell their personal information. We do not sell personal information as defined by Nevada law. If you are a resident of Nevada and would like to request that we not sell your information in the future, please contact us by following the steps below in 'Contact Inform

Need help making a decision?



## CONTACT INFORMATION

If you have any questions or comments about this notice, or the ways in which we collect and use your personal information, please do not hesitate to contact us at:

**Phone**: 1-866-650-1857

**Email**: compliance@integritymarketing.com

**Physical Address**: 1445 Ross Avenue, 40th Floor, Dallas, Texas 75202

Last Updated Date: 10/10/2023 |
MULTIPLAN_PLANENROLL_SITEV1_2024_M



### Introduction to Medicare

Medicare Basics

Parts of Medicare

Coverage Options

Enrollment

### Company

Our Commitment

Privacy Notice

Terms of Service

SMS/M

Contact Agent

Need help making a decision?

## Questions?

Call 1-855-422-5837 | TTY: 711 to speak with a licensed insurance agent

## Connect with us

   

PlanEnroll represents Medicare Advantage HMO, PPO, PFFS, and Prescription Drug Plan organizations that have a Medicare contract and/or a Medicare-approved Part D sponsor. Enrollment depends on the plan's contract renewal. Every year, Medicare evaluates plans based on a 5-star rating system. PlanEnroll is a brand operated by Integrity Marketing Group, LLC and is used by its affiliated licensed insurance agencies that are certified to sell Medicare products. PlanEnroll is a non-government website and is not endorsed by the Centers for Medicare and Medicaid Services (CMS), the Department of Health and Human Services (DHHS) or any other government agency.

We do not offer every plan available in your area. Currently we represent 0-7 organizations which offer 0-60 products in your area. Please contact Medicare.gov, 1-800-MEDICARE, or your local State Health Insurance Program (SHIP) to get information on all of your options.

The exact carrier and plan counts are determined by your zip code and county.

To send a complaint to Medicare, call 1-800-MEDICARE (TTY users should call 1- 877-486-2048), 24 hours a day/7 days a week). If your complaint involves a broker or agent, be sure to include the name of the person when filing your grievance.For a complete list of available plans please contact 1-800-MEDICARE (TTY users should call 1- 877-486-2048), 24 hours a day/7 days a week or consult Medicare.gov.

 Need help making a decision? 



# Terms Of Service

These website Terms of Use ("Terms") describe the rules for using this website, including the information posted herein ("Content"). By using this website, you agree to these Terms and the privacy policy posted on the website, which constitute a legally binding agreement between you, the person using this website, and PlanEnroll, a platform operated by Integrity Marketing Group and its affiliates (hereinafter "Company" or "we," "us," or "our"). If you are helping another person use this website, these Terms constitute a legally binding agreement between both the helper and the person being helped and the Company. We may terminate your access to this website at any time for any reason. If you breach any of these Terms, you may no longer use the website.

This website does not contain content intended for individuals under the age of 18. By using this website, you represent and warrant that you are at least 18 years of age.

The Content on this website is for your general educational information only. Company makes no representation as to the accuracy or completeness of the information on the website, including with respect to price or the description of any product. The Content cannot, and is not intended to, replace the relationship that you have with your health care professionals, insurance agent, or financial advisor. The Content on this website sho... considered medical or financial advice and is not ... or financial advice. If you are experiencing a medical emergency, you

Need help making a decision?



should seek appropriate emergency medical assistance, such as calling "911".

This website is intended for a United States audience. If you live outside the U.S., you may see information on this website about products or therapies that are not available or authorized in your country.

## Medicare Disclaimer

**We do not offer every plan available in your area. Any information we provide is limited to those plans we do offer in your area. Please contact Medicare.gov or 1-800-MEDICARE to get information on all of your options.**

The Company is or works with licensed insurance agencies. The Company is not affiliated with or endorsed by any government agency.

## Changes to Terms

We may change these Terms at any time, and such changes will be posted on this or a similar page of this website. It is your responsibility to review these Terms each time you use this website. By continuing to use this website, you consent to any changes to our Terms.

## Website Content

Subject to these Terms, you may view the Content on this website for the sole purpose of collecting information regarding plans for your personal or household use and related activities such as, if permitted on this website, applying for a plan. All rights, title, and interest in and to the website, including the Content, and all intellectual property rights, including all copyright, trademark, patent, and trade secret rights therein shall remain with the Company and our licensors and vendors, and no ownership interest is transferred to you or any other entity by virtue of making the Content available on the website.

We will also retain ownership of any information that you enter into the forms on this website, subject to applicable p... the Health Insurance Portability and Accountabili...

Need help making a decision?



## Restrictions on Your Use of this Website

While using this website, you may not:

- Use this website or Content in any way not permitted by these Terms or the text of the website;

- Copy, modify, or create derivative works involving the Content for purposes other than your personal use;

- Provide us with any false information in any forms on the website;

- Attempt to interfere with the operation of this website;

- Post any material or information on the website (i) which is profane, libelous, defamatory, obscene, pornographic, indecent, lewd, harassing, threatening, harmful, invasive of privacy or publicity rights, abusive, inflammatory, or otherwise objectionable, or (ii) the transmission of which could violate, or facilitate the violation of, any applicable law, regulation, or intellectual property rights;

- Attempt to access any portion of this website to which you have not been granted access;

- Or directly or indirectly authorize anyone else to take actions contrary to these Terms.

## Submission of Contact Information

By submitting your contact information on the website you authorize the Company or its business partners or business partners' agents or other representatives to contact you regarding the plans, products, or services that you identified, as well as similar or related plans, products, or services. Such contact may be commercial in nature and may be made by e-mail or telephone call, including call technologies such as a prerecorded voicemail. You acknowledge that you are not required to provide such authorization directly or indirectly as a condition of purchasing plans, products, or services through the Company. If you do not want to receive these communications, you may opt out of them at any time by following the opt-out instructions contained in the e-mail message, or by contacting us at:

**Phone**: 1-866-650-1857

Need help making a decision?



**Email**: compliance@integritymarketing.com

**Physical Address**: 1445 Ross Avenue, 40th Floor, Dallas, Texas 75202

# Changes to Website Content

This website may be unavailable from time to time for any reason, such as routine maintenance. You understand and acknowledge that the website may be interrupted, suspended, and terminated at any time. Furthermore, we may change, add, or remove some or all of the Content on this website at any time. In addition, please note that although our goal is to provide useful information, certain features that may be offered through this website, such as participating healthcare providers, pricing information, extent of coverage, or other Content, may not be accurate or up to date. In addition, please note that features of any plan or plans described in this website may change over time. The Company does not make any representations regarding the accuracy or completeness of these data or the availability of this website.

# Links

While visiting this website you may click on a link to other websites and leave this website. We provide links to other websites that may contain information that may be useful or interesting to you. We do not endorse, nor are responsible for, the content, accuracy, and accessibility of linked websites operated by third parties or for any of your dealings with such third parties. You are solely responsible for your dealings with such third parties, and we encourage you to read the terms of use and privacy policies on such third-party websites.

# NO WARRANTIES

ALL CONTENT ON THIS WEBSITE IS PROVIDED TO YOU ON AN "AS IS", "AS AVAILABLE" BASIS. THE COMPANY, ALL THIRD PARTIES, IF ANY, PROVIDING CONTENT FOR THIS WEBSITE, AND ALL THIRD PARTIES PROVIDING SUPPORT OR INFORMATION FOR THIS WEBSITE (COLLECTIVELY, "WEBSITE-RELATED-PARTIES") HEREBY DISCLAIM ALL WARRANTIES OF ANY KIND, EITHER EXPRESS OR IMPLIED, STATUTORY OR OTHERWISE INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, AND NON-INFRINGEME

THE WEBSITE-RELATED-PARTIES MAKE NO WAR
ACCURACY, COMPLETENESS, TIMELINESS, CORRECTNESS, OR

Need help making a decision?



RELIABILITY OF ANY CONTENT AVAILABLE THROUGH THIS WEBSITE. WITHOUT LIMITING THE FOREGOING, THE WEBSITE-RELATED-PARTIES SPECIFICALLY DO NOT REPRESENT OR WARRANT THAT ANY INFORMATION REGARDING PARTICULAR PLAN BENEFITS OR SCOPE OF COVERAGE IS ACCURATE OR COMPLETE. THE WEBSITE-RELATED-PARTIES MAKE NO REPRESENTATIONS OR WARRANTIES THAT USE OF THIS WEBSITE WILL BE UNINTERRUPTED OR ERROR-FREE, THAT DEFECTS WILL BE CORRECTED, OR THAT THIS WEBSITE OR THE TECHNOLOGY THAT MAKES IT AVAILABLE ARE FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS. YOU ARE RESPONSIBLE FOR TAKING ALL PRECAUTIONS NECESSARY TO ENSURE THAT ANY CONTENT YOU MAY OBTAIN FROM THIS WEBSITE IS FREE OF VIRUSES AND ANY OTHER POTENTIALLY DESTRUCTIVE COMPUTER CODE.

## LIMITATION OF LIABILITY

YOU AGREE THAT NONE OF THE WEBSITE-RELATED-PARTIES SHALL BE LIABLE FOR ANY DAMAGE RESULTING FROM YOUR USE OR INABILITY TO USE THIS WEBSITE OR THE CONTENT. THIS PROTECTION COVERS CLAIMS BASED ON WARRANTY, CONTRACT, TORT, STRICT LIABILITY, AND ANY OTHER LEGAL THEORY. THIS PROTECTION COVERS THE WEBSITE-RELATED-PARTIES, INCLUDING ALL AFFILIATES, AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS. THIS PROTECTION COVERS ALL LOSSES INCLUDING, WITHOUT LIMITATION, DIRECT OR INDIRECT, SPECIAL, INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, AND PUNITIVE DAMAGES, PERSONAL INJURY/WRONGFUL DEATH, LOST PROFITS, OR DAMAGES RESULTING FROM LOST DATA OR BUSINESS INTERRUPTION. THE TOTAL, CUMULATIVE, LIABILITY OF THE WEBSITE-RELATED-PARTIES, INCLUDING ALL AFFILIATES, AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, IF ANY, FOR LOSSES OR DAMAGES SHALL BE LIMITED TO THE AMOUNT OF YOUR ACTUAL DAMAGES, NOT TO EXCEED U.S. $100.00. THE LIMIT OF LIABILITY MAY NOT BE EFFECTIVE IN SOME STATES. IN NO EVENT SHALL THE WEBSITE-RELATED-PARTIES, INCLUDING ALL AFFILIATES, AND THEIR OFFICERS, DIRECTORS, EMPLOYEES, AND AGENTS, BE LIABLE TO YOU FOR ANY LOSSES OR DAMAGES OTHER THAN THE AMOUNT DESCRIBED ABOVE. ALL OTHER DAMAGES, DIRECT OR INDIRECT, SPECIAL, INCIDENTAL, N EXEMPLARY, OR PUNITIVE, RESULTING FROM AN WEBSITE OR CONTENT ARE EXCLUDED EVEN IF

RELATED-PARTIES HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. YOU AGREE THAT YOU USE THIS WEBSITE AT YOUR OWN RISK. IF YOU ARE DISSATISFIED WITH THIS WEBSITE OR THE CONTENT, YOUR SOLE AND EXCLUSIVE REMEDY IS TO DISCONTINUE USING THE WEBSITE.

The foregoing limitation of liability is not applicable to residents of New Jersey. With respect to residents of New Jersey, the Released Parties are not liable for any damages unless such damages are the result of our negligent or reckless acts or omissions; and the Released Parties are not, in any case, liable for indirect, incidental, special, consequential, or punitive damages.

You acknowledge and agree that Company's suppliers are third-party beneficiaries of these Terms, with the right to enforce the limitations of warranty and liability set forth herein with respect to the respective technology of such suppliers and Company.

## Indemnification

You agree to defend and indemnify, Website-Related-Parties and their subsidiaries, affiliates, officers, directors, employees, and agents, harmless from any claim, demand, or damage, including reasonable attorneys' fees, arising out of or related to your breach of these Terms or your use or misuse of the Content or website.

## MANDATORY ARBITRATION

EXCEPT AS OTHERWISE PROVIDED IN THESE TERMS, ALL CLAIMS, DISPUTES, AND CONTROVERSIES ARISING OUT OF OR IN ANY MANNER RELATING TO THESE TERMS, OR ANY AGREEMENT EXECUTED IN CONNECTION WITH THESE TERMS, OR TO THE PERFORMANCE, INTERPRETATION, APPLICATION, OR ENFORCEMENT HEREOF, INCLUDING BUT NOT LIMITED TO OCCURRENCE HEREOF (IN EACH CASE, "DISPUTE"), SHALL BE SUBMITTED TO BINDING, NON-APPEALABLE ARBITRATION IN ACCORDANCE WITH THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION IN FORCE AT THE TIME THE DEMAND IS FILED, UNLESS THE PARTIES MUTUALLY AGREE OTHERWISE. Either Party may within one (1) year from the inception of the alleged occurrence resulting in the Dispute, which demand for arbitration by filing a demand in writing party and serving the same by depositing it in the U.S. Mail, certified

Need help making a decision?



mail, return receipt requested. Each of the Parties shall choose, within sixty (60) days after demand for arbitration is made, its arbitrator and the two appointed arbitrators shall choose a third arbitrator possessing the same qualifications. All arbitration hearings conducted hereunder, and all judicial proceedings to enforce any of the provisions hereof, shall take place in Dallas County, Texas. The hearing before the arbitrators of the matter to be arbitrated shall be at the time and place within said County as is selected by the arbitrators. The decision of any two arbitrators with respect to a Dispute shall be binding and conclusive and non-appealable and shall be submitted to the court for confirmation with the same effect as a judgment. Each of the parties hereby irrevocably waives punitive, exemplary, consequential, and other non-compensatory damages in connection with any arbitration award with respect to any dispute.

## Governing Law and Statute of Limitations

The laws of the State of Texas govern these Terms and any cause of action arising under or relating to your use of the website, without reference to its choice-of-law principles. EACH OF YOU AND COMPANY HEREBY WAIVES RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THESE TERMS.

## Severability

The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in these Terms shall not affect the enforceability of the remaining portions of these Terms or any part hereof.

## Contact Us

The invalidity of any one or more of the words, phrases, sentences, clauses, sections or subsections contained in these Terms shall not affect the enforceability of the remaining portions of these Terms or any part hereof.

**Phone**: 1-866-650-1857

**Email**: compliance@integritymarketing.com

Need help making a decision?



**Physical Address**: 1445 Ross Avenue, 40th Floor, Dallas, Texas 75202

## Effective Date

The Effective Date of these Terms is 05/24/2023.

Last Updated Date: 10/10/2023 |
MULTIPLAN_PLANENROLL_SITEV1_2024_M



**Introduction to Medicare**

Medicare Basics

Parts of Medicare

Coverage Options

Enrollment

**Company**

Our Commitment

Privacy Notice

Terms of Service

SMS/MMS Terms

Contact a Licensed Insurance Agent

**Questions?**

Call 1-855-422-5837 | TTY: 711 to speak with a licensed insurance agent

**Connect with us**

   

 Need help making a decision? 

PlanEnroll represents Medicare Advantage HMO, PPO, PFFS, and Prescription Drug Plan organizations that have a Medicare contract and/or a Medicare-approved Part D sponsor. Enrollment depends on the plan's contract renewal. Every year, Medicare evaluates plans based on a 5-star rating system. PlanEnroll is a brand operated by Integrity Marketing Group, LLC and is used by its affiliated licensed insurance agencies that are certified to sell Medicare products. PlanEnroll is a non-government website and is not endorsed by the Centers for Medicare and Medicaid Services (CMS), the Department of Health and Human Services (DHHS) or any other government agency.

We do not offer every plan available in your area. Currently we represent 0-7 organizations which offer 0-60 products in your area. Please contact Medicare.gov, 1-800-MEDICARE, or your local State Health Insurance Program (SHIP) to get information on all of your options.

The exact carrier and plan counts are determined by your zip code and county.

To send a complaint to Medicare, call 1-800-MEDICARE (TTY users should call 1- 877-486-2048), 24 hours a day/7 days a week). If your complaint involves a broker or agent, be sure to include the name of the person when filing your grievance.For a complete list of available plans please contact 1-800-MEDICARE (TTY users should call 1- 877-486-2048), 24 hours a day/7 days a week or consult Medicare.gov.

 Need help making a decision?