UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:23-CV-00375-KC |
| | ) |
| UNIFIED HEALTH, LLC, | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT UNIFIED HEALTH LLC'S MOTION TO DISMISS

This First Amended Complaint ("FAC") (Doc. 14) is the second iteration of serial TCPA Plaintiff Brandon Callier's allegations against Defendant Unified Health LLC ("Unified Health") and directly (and admittedly) contradicts the allegations in the initial Complaint ("Complaint") (Doc. 4). Unified Health moves this Court to dismiss all claims in the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1), as Plaintiff lacks standing, and 12(b)(6), as Plaintiff fails to state a claim.

As an initial matter, this Court lacks subject matter jurisdiction over this action because Plaintiff has not suffered an injury-in-fact fairly traceable to Unified Health's alleged actions. Plaintiff asserts claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA"), and Tex. Bus. & Comm. Code § 302.101 ("Section 302.101"). Plaintiff's Complaint initially alleged his coworker—Carlton Tatum—participated in generating his claims against Unified Health by calling Unified Health from Mr. Callier's phone on his behalf. Now, Plaintiff admits he "confused" Medicare sales companies and alleges he called Unified Health. Unified Health's records, in turn, confirm that the name and information of Elston Tatum, father of Brandon Callier and Carlton Tatum, were submitted to induce Unified Health to call the number

Plaintiff claims in the Complaint. Plaintiff's contradictory pleadings and Unified Health's records, along with pleadings filed by Plaintiff elsewhere, confirm Plaintiff's tendency to distort facts to serve his TCPA schemes. Moreover, the call recording confirms Plaintiff's interest in Unified Health's services for his father, Elston Tatum, further supporting Unified Health's position and confirming the submitted lead. Plaintiff cannot now claim to have incurred any injury in fact, and he therefore does not have standing to proceed before this Court.

In the alternative, Plaintiff's Complaint should be dismissed with prejudice as he fails to state a claim. First, Plaintiff's FAC does not correct the deficiencies in the Complaint and still alleges that the calls at issue were placed to a cellular phone, not a residential telephone line. As this Court has previously held, calls to cellular phones do not trigger the TCPA's Do-Not-Call ("DNC") regulations. *Callier v. GreenSky, Inc.*, No. 20-00304, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (Cardone, J.). Second, Plaintiff's Section 302.101 claim must be dismissed, as Plaintiff lacks a private right of action to assert his claim.

For these and other reasons set forth below, Unified Health respectfully moves this Court to dismiss the Complaint with prejudice. This Motion is supported by the Declaration of Whittney Hunsaker ("Hunsaker Decl.") and Unified Health's Request for Judicial Notice, which are being filed with this Motion.

## FACTUAL BACKGROUND

### A. Allegations in the initial Complaint

Per Plaintiff's initial Complaint, he alleged that he registered a phone number ending in 4604 with the National DNC Registry in December 2007. Doc. 4, ¶ 24. He acknowledged that phone number is a "cellular phone," which he does use (if not "primarily") for "business purposes." *Id.*, ¶ 51. He claimed that Unified Health violated the TCPA and Section 302.101 by calling him seven times between July 28, 2023 and October 4, 2023. *Id.*, ¶¶ 26–27, 33. Plaintiff averred that

he was present in Texas for all of the relevant calls, which purportedly occurred on July 28, 2023; August 11, 2023; August 25, 2023; September 15, 2023; September 27, 2023; September 27, 2023; and October 4, 2023. *Id.*, ¶¶ 1, 33. He also alleged that he made DNC requests on three of these calls. *Id.*, ¶ 28.

Importantly, according to the Complaint, Plaintiff "had a coworker . . . call Defendant Unified Health" on September 27, 2023 from his phone number. *Id.*, ¶ 31. Plaintiff presents himself publicly as the Owner/Manager of Aero Tax Services on the company's website.[1] The other individual listed on Aero Tax Services's website is a Mr. Carlton Tatum, also identified as an Owner/Manager. This is the only other known employee of Aero Tax Services, so in moving to dismiss the Complaint, Unified Health presented that Carlton Tatum was the "coworker" Plaintiff referenced in his Complaint as soliciting information from Unified Health. Doc. 4, ¶ 31.[2]

B.  **Unified Health's Records**

While Plaintiff alleged (and continues to allege) there was "no reason" for Unified Health to contact him, the facts evidence otherwise. Unified Health's records confirm that Unified Health was provided with request-for-callback information showing that an Elston Tatum, located in Tyler, Texas, submitted an online request for a call from an insurance agent through PlanEnroll on July 13, 2023, listing his phone number as (915) 383–4604. Hunsaker Decl., ¶ 5. Unified Health understands that PlanEnroll would neither have obtained nor provided this information to Unified

---

[1] This Motion is accompanied by a Request for Judicial Notice, requesting the Court take judicial notice of various documents, including the (1) the Complaint; and (2) the "Our Team" section of the website located at www.aerotaxservices.com, as well as other websites and public court filings cited herein.

[2] Contrary to Plaintiff's allegations in the FAC, Unified Health is not asserting a "conspiracy theory" regarding Plaintiff's father and brother. Doc. 14, ¶ 31. A request-for-callback was submitted to Unified Health with Elston Tatum's name and the at-issue phone number. Hunsaker Decl., ¶ 5. Plaintiff's Complaint brought his brother into the matter by including an apparently untrue allegation regarding a coworker. Doc. 4, ¶ 31.

Page 2

Health unless Mr. Tatum requested to be called at the number provided to discuss Medicare options. *Id.,* ¶ 6. Based on this understanding, Unified Health attempted to contact Mr. Tatum at the number provided. *Id.*, ¶ 7.

According to Unified Health's records, all calls occurred after the July 13, 2023 solicitation naming Mr. Tatum and associated with the above phone number. *Id.,* ¶ 7. No outgoing call to the above phone number resulted in communication between Unified Health and an individual on the other end. *Id.,* ¶ 8.[3] And, on September 27, 2023, Unified Health's records show a person identifying himself as "Brandon" called Unified Health from the above phone number. *Id.*, ¶ 9. That call lasted 2 minutes and 9 seconds, and after the call ended, a Unified Health agent noted into the record: "spoke to son Brandon father has medicare and is at work right now." *Id*. A recording of this call confirms that the caller: (a) indicated interest in being contacted; and (b) stated his father has Medicare and would be interested in speaking with a Unified Health representative in two hours. *Id.,* ¶ 10. At no point on this call did the caller—i.e., "Brandon"—ask not to be contacted by Unified Health or at this number. *Id*. Instead, Plaintiff indicated that his father, Elston Tatum, uses Medicare and would be interested in hearing more about Unified Health services. *Id*.; *see also* Ex. 1 to Hunsaker Decl., transcript of call. Following up on the expressed interest from the September 27, 2023 call with Plaintiff, the same Unified Health agent placed two October 28, 2023 calls, in which no communication occurred. *Id.,* ¶ 12.

Again, Unified Health's records show that no outgoing call resulted in a conversation between Plaintiff and Unified Health. Hunsaker Decl., ¶ 9. These "unanswered" calls were either

---

[3] The FAC alleges Ms. Hunsaker incorrectly averred in her December 4, 2023 declaration that no outgoing calls were "answered," so Ms. Hunsaker's December 26, 2023 declaration explains she defined a call as unanswered when no conversation occurred between a Unified Health broker and an answering recipient at the at-issue phone number. Hunsaker Decl., ¶ 8.

sent to voicemail or recordings demonstrate they did not connect to Plaintiff and no communication occurred; accordingly, a DNC request could not have been made. *Id*.

### C. The First Amended Complaint

After reviewing Unified Health's Motion to Dismiss, Plaintiff amended his Complaint and now admits what Unified Health had submitted all along: Plaintiff placed the September 27, 2023 call. Doc. 14, ¶ 38. Plaintiff still, however, inaccurately represents the substance of this call, claiming he "told them not to call back." Doc. 14, ¶ 51, Table A. A transcript of the call recording demonstrates that Plaintiff actually told Unified Health that his father, Elston Tatum, was a Medicare user and would be interested in hearing more about Unified Health in about two hours. Hunsaker Decl., ¶ 9.; *see also* Ex. 1 to Hunsaker Decl. (transcript of call).

As a basis for the inconsistency between the allegations in the Complaint and the newly generated facts in the FAC, Plaintiff alleges he "confused this Medicare sales company with another Medicare sales company and mistakenly stated" that Plaintiff's coworker made the September 27, 2023 call. Doc. 14, ¶ 98. Also in response to Unified Health's initial Motion to Dismiss (Doc. 10), the FAC includes declarations from Elston Tatum and Carlton Tatum averring that they did not participate in Mr. Callier's TCPA scheme.[4]

Plaintiff did not amend his allegations regarding use of his "cellular phone" for "business purposes." Doc. 14,  ¶ 109. He also continues to allege he was present in Texas for all calls, including the August 11, 2023 call. *Id*, ¶ 1.

---

[4] The Declaration from Carlton Tatum is inadmissible as it is unsworn; it begins with "I, Brandon Callier" but is signed by Carlton Tatum. *See* Doc. 12-8; *see also Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300, 1305–06 & n. 9 (5th Cir. 1988) (noting that an unsworn affidavit which failed to state that it was made under penalty of perjury was properly stricken from consideration).

### D.  Plaintiff's Actions, but Not His Allegations, Are Consistent with His History as a TCPA Litigant.

Plaintiff's actions here are but another example of his ongoing abuse of the federal courts. Although Plaintiff holds himself out as a tax services provider, his primary profession is as a "serial TCPA litigant [who] has filed dozens of TCPA cases in this division over the years." *Callier v. Jascott Enters., LLC,* No. 22-00301, Doc. 81 (W.D.Tex. Oct. 3, 2023) (denying Plaintiff's motion for leave to file second amended complaint). In other litigations in this Circuit, Plaintiff has been referred to as: (1) having a "history and pattern of this kind of bad faith litigation" (*Callier v. McCarthy Law, PLLC, et al.,* ECF No. 23, No. 21-00015 (W.D. Tex. Aug. 25, 2021)); (2) a "serial TCPA abuser … [who] makes a business of TCPA lawsuits" (*Callier v. Greensky, Inc.,* No. 20-00304, Doc. 19 (W.D. Tex. March 30, 2021)); and (3) an "abus[er of] the TCPA to turn a profit" (*Callier v. Multiplan, Inc., et al.,* No. 20-00318, Doc. 26 (W.D.Tex. March 24, 2021)). The vast majority of Plaintiff's many TCPA litigations are quickly resolved as a part of his career of extorting settlements as a professional TCPA plaintiff. *See, e.g. Callier v. Debt Consultants Group Inc.,* No. 23-00333, Doc. 8 (Oct. 3, 2023) (W.D. Tex.) (notice of voluntary dismissal filed one month after complaint with no responsive pleading).

Plaintiff's claims are so prolific that he can no longer keep them consistent. For example, Plaintiff alleges here that he is a resident of El Paso, Texas, listing his home address as 1490 A George Dieter Drive #174, El Paso, TX 79936, with a phone number of (915) 383–4604. Plaintiff's actual residence, however, is hard to pin down, as it changes depending on the litigation being filed. *Compare, e.g.*, *Callier v. Family Advantage Plus Grp., LLC, et al.,* No. 23-cv-00470, Doc. 1 (E.D.N.C.) (filed Aug. 29, 2023) ("Plaintiff Brandon Callier is a natural person, a resident of the Eastern District of North Carolina, and was present in North Carolina for all calls relevant to this case"), *with, e.g.*, *Callier v. POWUR PBC,* No. 23-00302, Doc. 3 (W.D. Tex.) (filed Aug. 17,

2023), claiming TX residency); *Callier v. MCA Resolve LLC et al*, No. 23-00318, Doc. 2 (W.D. Tex.) (filed Aug. 30, 2023) (claiming TX residency).

It is therefore unsurprising that Plaintiff has filed a number of pleadings in the past four months containing allegations that contradict allegations made in other federal court pleadings, including the at-issue Complaint. For example, Plaintiff claims (in both the Complaint and the FAC) to have been present in Texas for all relevant phone calls to this litigation, including a call made at 12:08 p.m. on August 11, 2023. Doc. 4, ¶ 1, 33; Doc. 14, ¶ 1. However, Plaintiff also recently filed a TCPA litigation in the Western District of North Carolina, claiming to have been present in North Carolina for five calls made between August 2 and August 11, 2023, including a call placed on August 11, 2023 at 2:38 p.m.—*i.e.*, after he allegedly received a call in Texas. *Callier v. Family Advantage Plus Grp., LLC, et al.,* No. 23-cv-00470, Doc. 1, ¶ 49 (W.D.N.C.). Plaintiff's allegations about his presence in North Carolina in *Family Advantage Plus* also contradict his allegations in at least one other action in which he claimed to be present in Texas for calls made on August 2, 2023 and August 4, 2023. *See Callier v. POWUR PBC*, No. 23-00302, Doc. 3, ¶ 41 (W.D. Tex.). Plaintiff has either misrepresented his whereabouts to multiple federal courts or has figured out how to be in two places at once.

## ARGUMENT

I.  **This Court Should Dismiss the Complaint Because Plaintiff Lacks Article III Standing as a Matter of Fact and Therefore this Court Lacks Subject Matter Jurisdiction.**

   A.  **Legal Standard**

Pursuant to Article III of the U.S. Constitution, the federal judicial power is "confine[d]" to "the resolution of cases and controversies." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203 (2021). For Plaintiff to have standing, a case or controversy must exist, requiring Plaintiff show "that he suffered an injury in fact that is concrete, particularized, and actual or imminent." *Id.*

"[W]here a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Cunningham v. Mark D. Guidubaldi & Assocs., LLC*, No. 18-0118, 2019 WL 1119365, at *2 (E.D. Tex. Jan. 11, 2019), *report and recommendation adopted*, No.18-0118, 2019 WL 1117915 (E.D. Tex. Mar. 11, 2019) (internal citation omitted); *see also Spokeo, Inc. v. Robins,* 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). Such injury, however, must have a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200.

"When moving to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, a defendant can make a facial or factual challenge." *Smith v. Moss L. Firm, P.*C., No. 18-2449, 2019 WL 201839, at *3 (N.D. Tex. Jan. 15, 2019) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981)). For a plaintiff to defeat a factual attack, he must submit facts through some evidentiary method to prove the existence of subject-matter jurisdiction by a preponderance of the evidence. *Id.*; *see also Spokeo,* 578 U.S. at 338 (holding Plaintiff has the burden to establish standing); *Ace Am. Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 187 (S.D. Tex. 2008) ("the district court has the authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'").

"It is well settled that courts may take judicial notice of matters of public record" like prior complaints. *Sanders v. Univ. of Texas Pan Am.,* 776 F. App'x 835, 837–38 (5th Cir. 2019). "Admissions in superseded pleadings may 'lose their binding force,' but they nevertheless retain value 'as evidentiary admissions.'" *Id.*, (citing *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 n.5 (5th Cir. 1983); 6 Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 1476

(3d ed. 2018) (noting "allegations in a pleading that has been withdrawn may be allowed into evidence as an admission of the party")).

### B. Plaintiff Has Not Suffered an Injury in Fact.

Plaintiff alleges that he suffered injury from nine "unsolicited" calls in the form of "a nuisance and invasion of privacy," "trespass[] upon and interfering with Plaintiff's rights and interests," "intru[sion] upon seclusion," and "reduced device storage space." Doc. 14, ¶¶ 106–108. The Court, however, may consider the facts in evaluating jurisdiction, which includes evaluating Plaintiff's "injury." The facts show that Plaintiff's TCPA scheme, which spans multiple years and multiple jurisdictions, has become unwieldy for him to maintain, resulting in error. First, Plaintiff tipped his hand in his Complaint, laying out his scheme of soliciting phone calls to manufacture TCPA claims, including the calls at issue here. Now, Plaintiff alleges he was "confused," did not collude with a coworker to solicit calls, and instead, he personally placed a call to Unified Health. Doc. 14, ¶ 98. While he claims he told Unified Health not to call back, the call recording provided by Unified Health demonstrates yet another misrepresentation to this Court by Plaintiff. Hunsaker Decl., Ex. 1. Plaintiff did not request that Unified Health stop calling and clearly expressed an interest in Unified Health's services on behalf of his father, Elston Tatum. *Id*. This is in line with the pattern of contradictory facts alleged by Plaintiff in a number of federal litigations, including as to his whereabouts.

To be clear, prior to any calls being made by Unified Health, Plaintiff or his confederates used Elston Tatum's name and information to request calls regarding Medicare services be placed to Plaintiff's phone number.[5] *See* Hunsaker Decl., ¶ 5. This lead from PlanEnroll naming Elston

---

[5] Plaintiff would need to use the information of someone 65-years old or older or otherwise eligible for Medicare to solicit calls from a Medicare provider, such as Unified Health. *Who's eligible for Medicare*, U.S. Dep't Health & Human Servs., https://www.hhs.gov/answers/medicare-and-medicaid/who-is-eligible-for-medicare/index.html (visited Dec. 4, 2023).

Tatum aligns with the subsequent September 27, 2023 call recording, in which Plaintiff indicated interest in Unified Health's services on behalf of Elston Tatum. *See* Hunsaker Decl., ¶ 10; *see also* Ex. 1. The Court can and should take judicial notice of the ever-shifting "facts" alleged by Plaintiff because Plaintiff's contradictory and suspicious allegations in his two pleadings render it unquestionable that Plaintiff solicited calls. Unified Health's records and other publicly available information controvert Plaintiff's claim of injury resulting from "unsolicited" phone calls; rather, Plaintiff *solicited* calls in an apparent effort to manufacture an "injury" to support this lawsuit.

Plaintiff may argue that, even if he solicited the first call, he allegedly made DNC requests during other calls. Doc. 14, ¶ 28. These allegations, however, are contradicted by Unified Health's records. According to Unified Health's records, no outgoing calls were "answered," meaning no conversation occurred between a Unified Health broker and an answering recipient at the at-issue phone number. *See* Hunsaker Decl., ¶ 8. Two outgoing calls—one on September 27, 2023 and one on October 28, 2023—connected to the at-issue phone number but Unified Health's records (including recordings of these two calls) show that no communication occurred between Unified Health and the answering individual. *Id*. Contrary to Plaintiff's allegations, the only call that resulted in communication between Unified Health and the at-issue phone number was the above-referenced September 27, 2023 call, in which Plaintiff now admits he called Unified Health. *Id*., ¶ 5. And during this conversation, Plaintiff did not ask Unified Health to refrain from calling him; in fact, he indicated to a Unified Health agent, Carol Ciulla, that his father had Medicare and would be interested in speaking with the caller in two hours. *Id.,* ¶ 10.  Based on Plaintiff's own representations during the September 27, 2023 call, Ms. Ciulla directly placed the two October 28, 2023 calls noted by Plaintiff to follow up on Plaintiff's expressed interest. *Id*., ¶ 11.

Plaintiff's claim manufacture does not end with the calls. He alleges that he was present in Texas on August 11, 2023 when he received a call from Unified Health, while at the same time claiming in a separate litigation to have been present in North Carolina hours later (where he purportedly received a call from a different victim of his TCPA scheme). *Compare* Doc. 14, ¶¶ 1, 51, *with Family Advantage Plus Grp., LLC,* No. 23-00470 at ECF No. 1, ¶ 49. Given travel time, and the fact that the other North Carolina calls allegedly occurred from August 2, 2023 to August 11, 2023, it would be untenable for Plaintiff to have been in Texas for a phone call at 12:08 p.m. on August 11, 2023 and in North Carolina for a 2:38 p.m. call that same day. *Id*.

Professional litigants can sometimes survive a motion to dismiss on barebones allegations; but where the *facts* confirm the litigant purposefully generated calls in order to file TCPA claims, the action must be dismissed, as the plaintiff has not in fact been injured. *See Leyse v. Bank of Am. Nat'l Ass'n*, 856 F. App'x 408, 411 (3d Cir.) (affirming dismissal of TCPA plaintiff's claim as he could not "allege one of those injuries that the TCPA is intended to prevent"); *Morris v. Unitedhealthcare Ins. Co*., No. 15-00638, 2016 WL 7115973, at *6 (E.D. Tex. Nov. 9, 2016), *report and recommendation adopted*, No. 15-00638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) ("TCPA suits have, in many instances, been abused by serial litigants; and going forward each such case merits close scrutiny on the issue of standing in light of *Spokeo*"); *Stoops v. Wells Fargo Bank, N.A*., No. 15-00083, 2016 WL 3566266, at *12 (W.D. Pa. June 24, 2016) (professional TCPA plaintiff did not have standing as they maintained multiple cell phones for the purpose of receiving calls to file TCPA lawsuits).

Plaintiff will no doubt point to *Callier v. GreenSky, Inc.*—in which this Court declined to dismiss Plaintiff's complaint for lack of subject matter on the pleadings—to argue that he should again survive a Rule 12(b)(1) motion. *See* 2021 WL 2688622, at *4. As this Court acknowledged,

however, Plaintiff has able to survive a *facial* challenge to his standing in *GreenSky* because the defendant failed to bring *evidence* demonstrating Plaintiff was trying to "gin up TCPA claims." *Id.* Unlike other Callier claims, including in *GreenSky*, the facts before this Court show clear evidence of "gin[ning] up" of a TCPA claim, including: misrepresentations in federal court pleadings as to his whereabouts; contradictory factual allegations in his two attempts to plead claims against Unified Health, including as to who placed the September 27, 2023 call from the at-issue phone number; and finally, Unified Health's records regarding the content of the September 27, 2023 call and "DNC" requests allegedly made when no communication could have occurred. As in *Stoops,* because Unified Health has shown that Plaintiff initially solicited and then continued to solicit calls in order to bring this litigation, "the calls did not constitute 'the nuisance, invasion of privacy, cost, and inconvenience' from which Congress intended to protect consumers." *Stoops,* 197 F. Supp. 3d at 800 (citing *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 7980 (2015)).

As this Court noted in *GreenSky*, a TCPA plaintiff can often survive a *facial* Rule 12(b)(1) challenge by alleging the receipt of unwanted calls. But as the Supreme Court made clear in *TransUnion*, a district court *cannot* exercise subject matter jurisdiction over a plaintiff's claim unless that plaintiff can establish the calls actually inflicted an injury with a "close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2200. Plaintiff cannot meet this burden on the facts: he suffered no violation of privacy or other interests through calls he solicited and must now be held to provide evidence to the contrary. *Smith*, 2019 WL 201839, at *3. As Plaintiff cannot do so, this Court must reject Plaintiff's boilerplate allegations and dismiss this action for lack of subject matter jurisdiction.

## II.  Alternatively, This Court Should Dismiss the Complaint Because Plaintiff Fails to State a Claim for Violation of the TCPA or Section 302.101.

### A.  Legal Standard

When ruling on a Rule 12(b)(6) motion to dismiss, district courts evaluate whether—disregarding mere conclusory statements—"the complaint states any legally cognizable claim for relief." 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2022). In other words, a complaint must "contain sufficient factual matter" that, if accepted as true, states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But while courts "must take all of the factual allegations in the complaint as true," this presumption is "inapplicable to legal conclusions couched as factual allegations." *Id*. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief" and is properly dismissed. *Iqbal*, 556 U.S. at 679.

Plaintiff asserts two claims against Unified Health: in Count I, he alleges Unified Health violated the TCPA by placing calls to a "residential telephone number . . . registered on the National Do-Not-Call Registry" in violation of 47 C.F.R. § 64.1200(c)(2) (Doc. 4, ¶ 53); and in Count II he alleges Unified Health violated Section 302.101 by placing "solicitation sales calls to Plaintiff without having a valid telephone solicitation [certificate]" (*id.*, ¶ 59; *see also id.*, ¶ 42). Both claims fail, and the Complaint should be dismissed with prejudice.

> B.   **Plaintiff's TCPA Claim Fails as He Does Not Allege Any Calls to a Residential Telephone Subscriber in Violation of the DNC Regulations.**

Plaintiff has failed to allege a key element of his claim for relief under 47 C.F.R. § 64.1200(c)(2). This regulation provides, in relevant part, that "[n]o person or entity shall initiate any telephone solicitation to . . . [a]ny **residential telephone subscriber**" listed on the National DNC Registry. 47 C.F.R. § 64.1200(c)(1); *see also* 47 U.S.C. § 227(c)(1), (3) (limiting FCC's rulemaking to the "need to protect **residential telephone subscribers**" (emphasis added)).

Here, Plaintiff acknowledges that the alleged calls were made to his "cellular phone." Doc. 4, ¶ 51. But as this Court recognized in *Callier v. GreenSky, Inc.*, a call to a cellular phone is not a call to a "residential telephone subscriber":

> By its plain terms, 47 C.F.R. § 64.1200(d)(1) prohibits telemarketing calls made to "**a residential telephone subscriber**." 47 C.F.R. § 64.1200(d)(1). Plaintiff alleges that the calls were placed **to his cellphone**, not a residential line. Within his Response, Plaintiff expands on his allegations regarding Defendant's do-not-call policies but does not address Defendant's argument that **the regulation does not apply to cellphones**. *See* Resp. 4. Plaintiff does not cite—and the Court is not aware of—**any authority that has found § 64.1200(d)(1) applicable to cellphones**. Accordingly, the Court finds that this claim fails as a matter of law.

2021 WL 2688622, at *6 (emphases added). While Plaintiff's claim in *GreenSky* related to § 64.1200(d), the same result must follow under § 64.1200(c), which also applies only to telemarketing calls made to "**[a] residential telephone subscriber**." 47 C.F.R. § 64.1200(c)(2) (emphasis added).

Recognizing this issue, Plaintiff seeks to recast his "cellular phone" as a "residential number" by alleging it to be his "personal cell phone that he uses for personal, family, and household use." Doc. 4, ¶ 51. This Court, however, rejected such allegations in *GreenSky*, dismissing Plaintiff's DNC claim despite his raising identical allegations. *Compare id.*, *with* 2021 WL 2688622, at *4. Further, Plaintiff acknowledges in both the Complaint and FAC that he uses his cellular phones for purposes other than to "communicate with friends and family," including

for "business purposes." Doc. 14, ¶ 109. "[B]usiness numbers are not permitted to be registered on the Do Not Call Registry." *Worsham v. Discount Power, Inc.,* No. 20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021) (dismissing claim where number was used for residential and business purposes); *see also Shelton v. Target Advance LLC,* No. 18-02070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (finding telephone used for business purpose did not qualify as residential).

As this Court has already found, Plaintiff's reliance on his "cellular phones"—which are inherently untethered to his residence—to assert DNC claims fail in the face of the regulation's plain language, and as such, his TCPA claim must be dismissed with prejudice.

### C. Plaintiff Fails to Allege Facts Supporting a Section 302.101 Violation and, in Any Event, Lacks a Right of Action to Assert this Claim.

Plaintiff's Section 302.101 claim also falls short. Plaintiff asserts that Unified Health violated Section 302.101 by "placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State" and he is therefore entitled to $5,000 per call he received. Doc. 14, ¶¶ 64, 117. This is incorrect as plead and as a matter of law.

First, even if Plaintiff adequately alleged a Section 302.101 violation (he did not), he lacks any basis for relief. As Plaintiff concedes, Section 302.101 provides a private right of action *only* through the Texas Deceptive Trade Practices Act ("DTPA"). Doc. 14, ¶ 65 (citing Tex. Bus. & Com. Code § 302.303). This private right of action, however, is limited to instances where the "'deceptive act or practice' causes 'economic damages or damages for mental anguish.'" *Id.*, ¶ 66. And, to succeed on a DTPA claim, a plaintiff must also establish that he "relied to his detriment on the deceptive act." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (citing Tex. Bus. & Com. Code § 17.50(a)(1)(b)). In other words, to state a claim, Plaintiff must allege that he relied on Unified Health's *holding of a registration certificate* to his detriment, and that

Unified Health's purported *failure to hold a registration certificate* resulted in *actual* economic injury or mental anguish.

He does not and cannot so allege. Nowhere does Plaintiff allege that he took any steps in reliance on Unified Health being registered with the Secretary of State. *Arencibia v. AGA Serv. Co.*, No. 20-0819, 2020 WL 10056799, at *6 (N.D. Tex. Nov. 13, 2020) (dismissing DTPA claim where plaintiff acted based on the policy offered, not the misrepresentation alleged). Nor does Plaintiff allege any resulting harm. At best, Plaintiff alleges that the "calls"—not any registration status—harmed him by causing a "nuisance and invasion of privacy." Doc. 14, ¶ 105. But such harm is unrelated to Unified Health's registration status and, in any event, falls well short of the "economic or damages for mental anguish" required to assert a claim. The DTPA was enacted to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty," Tex. Bus. & Com. Code § 17.44(a), not to enrich unscrupulous TCPA plaintiffs.

Third, even if Plaintiff had stated a claim for relief under the DTPA (he did not), his damages are limited to the actual harm sustained. *Rathmann v. Ford Motor Co.*, No. 21-00610, 2023 WL 6150270, at *7 (W.D. Tex. Aug. 25, 2023), *report and recommendation adopted*, No. 21-00610, 2023 WL 6150787 (W.D. Tex. Sept. 20, 2023). Plaintiff nonetheless seeks to recover up to $5,000 per alleged call received, citing Tex. Bus. & Com. Code § 302.302(a). Doc. 14, ¶ 118. This provision, however, pertains to the "civil penalty" recoverable by the Texas Attorney General, not a private individual. *See* § 302.302. "Generally, a statutory penalty or fine is not payable to a private litigant." *Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004). Texas "statute[s] providing for a [] penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides." *Id.* at 565. When a

statute that provides for a civil penalty is silent as to who may file suit to recover it, the Texas Supreme Court has "strictly construed" the statute to permit a claim only by "the Attorney General or some other governmental entity or representative." *Id.* at 563–65 (holding statute stating "seller who violates Subsection (a) is subject to a penalty" did not create a private cause of action).

Here, the cited "Civil Penalty" provision states simply that "[a] person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation." § 302.302(a). The statutory scheme further contemplates that the Texas Attorney General—not any individual—would be properly positioned to enforce the statute. *See* § 302.301 (requiring attorney general to take certain steps before seeking an injunction); § 302.302(b), (c) (providing for increased civil penalties recoverable by attorney general when an injunction is violated). By contrast, and as Plaintiff concedes (Doc. 14, ¶ 65), the legislature chose to empower individuals with a private right of action via the DTPA only. Given this overall framework, the "civil penalty" provided must be strictly construed as unavailable to Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Unified Health respectfully requests that this Court grant its Motion and issue an Order dismissing Plaintiff's Complaint with prejudice and ordering such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 27, 2023

        COZEN O'CONNOR, P.C.

        */s/ Rachel B. Soloman*
        Rachel B. Soloman (admitted *pro hac vice*)
        3 WTC
        175 Greenwich Street, 55th Floor
        New York, NY 10007
        rsoloman@cozen.com

        Tyler M. Frankel
        State Bar Number: 24101767
        1717 Main Street, Sute 3100
        Dallas, Texas 75201
        tfrankel@cozen.com

**CERTIFICATE OF SERVICE**

      I hereby certify that I filed the above pleading and all accompanying documents through the Court's electronic filing system on December 27, 2023 and that the above pleading and all accompanying documents will be served on all parties and counsel of record through the Court's electronic filing system.

Andrew Roman Perrong (W.D. Tex. # 333687)
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff*

                                          */s/ Rachel B. Soloman*
                                          Rachel B. Soloman