EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** a Florida resident, | § |
| | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | §      EP-23-CV-00318-DCG |
| | § |
| **MCA RESOLVE LLC**, a Florida Limited | § |
| Liability Company, and **PAUL GRAFMAN**, a | § |
| Florida resident | § |
| | § |
| **Defendants.** | § |
| | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

**1.**     Plaintiff Brandon Callier ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

**2.**     Defendant MCA RESOLVE LLC ("Resolve") is a Limited Liability Company organized and existing under the laws of Florida and can be served via registered agent and President Paul M Grafman at 220 Congress Park Drive Suite 215 Delray Beach, Florida 33445, United States.

**3.**     Defendant PAUL GRAFMAN ("Grafman") is a natural person, Florida resident, and President of Defendant Resolve, and can be served at 220 Congress Park Drive Suite 215 Delray Beach, Florida 33445, United States.

**4.**     Unnamed Party Eastern Financial Partners ("Eastern Financial") is a marketing company that operates overseas and makes telemarketing phone calls at the direction and control of Defendant Resolve. Eastern Financial is out of the reach and jurisdiction of the laws of the United States.

**5.**     Unnamed Party Leo Smith ("Smith") is a natural person, resides overseas, and is an employee of Eastern Financial.

<b>JURISDICTION AND VENUE</b>

**6.**     Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**7.**     This Court has specific personal jurisdiction over Resolve because Defendant Resolve purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Resolve's purposeful contacts with Texas and the litigation.

1. Defendant Resolve targets Texas when Eastern Financial markets on their behalf Merchant Cash Advance Relief services and regularly conducts business in this District, including telephone solicitations.

2. Defendant Resolve's agent Eastern Financial called Plaintiff's El Paso area phone number ending in -4604 to generate leads for Defendant Resolve.

3. Defendant Resolve authorized Eastern Financial to purposefully make unauthorized calls to Plaintiff in Texas and this District.

4. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Resolve, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction.  *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

**8.**     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the

Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Eastern Financial at the direction and control of Defendant Resolve that is the subject matter of this complaint.

9.      This Court has venue over Defendant Resolve because the unauthorized calls at issue were sent by Eastern Financial at the direction and control of Defendant Resolve to Plaintiff, a Texas resident.

10.     This Court has specific personal jurisdiction over Defendant Grafman because Defendant Grafman purposefully availed himself to the State of Texas and to this District, and there is a sufficient relationship between Defendant Grafman's purposeful contacts with Texas and the litigation.

     1. Defendant Grafman directed that Texas be targeted with telephone solicitations by Eastern Financial, and regularly conducts business in this District via those targeted telephone solicitations.

     2. Defendant Grafman's agents Eastern Financial called Plaintiff's El Paso area phone number ending in -4604 to generate leads for Defendant Resolve.

     3. Defendant Grafman authorized Eastern Financial to purposefully make unauthorized calls to Plaintiff into Texas and this District.

     4. The purposeful calls injured Plaintiff in Texas, creating a causal link among Defendant Grafman, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

11.     This Court has venue over Defendant Grafman because the unauthorized calls at issue were sent by Eastern Financial at the direction and control of Defendant Grafman to Plaintiff, a

Texas resident

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

12.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

13.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

14.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

15.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

16.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

4

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

17.     The TCPA provides a private cause of action to persons who receive calls in violation of

227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

18.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

19.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

20.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

21.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of*

*1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying
a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

22.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

23.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

24.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

25.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

26.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A]  predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be

6

called into the equipment, and the dialer calls them at a rate to ensure that when a consumer

answers the phone, a salesperson is available to take the call.

27.    In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic

telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

28.    A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability,

the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

29.    The Texas Business and Commerce Code requires sellers to obtain a registration

certificate from the Secretary of State in order to make telephone solicitations inside the state of

Texas or to residents located in Texas.

30.    The Plaintiff may seek damages of violations of Texas Business and Commerce Code §

302.101 of up to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs

investigation costs, depositions expenses, witness fees, and attorney's fees.

31.    Texas Business and Commerce code § 302.101 provides a private right of action. A

violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

**32.**     The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

## FACTUAL ALLEGATIONS

**33.**     Plaintiff personally successfully registered his phone number ending in 4604 on the National Do-Not-Call Registry ("DNC"), on December 2007.

**34.**     Plaintiff was registered on the National DNC at all times relevant to this Complaint.

**35.**      Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**36.**     Defendant Resolve operates as a Merchant Cash Advance ("MCA") debt relief company.

**37.**     Defendant Resolve's agent Eastern Financial called Plaintiff at least eight (8) times. All eight (8) calls were unauthorized direct sales calls.

**38.**     Upon information and belief Defendant Resolve's agent Eastern Financial called Plaintiff more times over the last four (4) years that he is currently unaware of without the benefit of Discovery.

**39.**     Upon information and belief Defendant Resolve used other marketing agencies to contact Plaintiff over the last four (4) years that Plaintiff is unaware of at this time without the benefit of Discovery.

**40.**     Calls #1, DNC Request #1**,** on June 07, 2023, at 9:32 AM Plaintiff received a call from 561-736-1621. Plaintiff responded with "hello" and was greeted by an agent of Defendant Resolve asking if Plaintiff needed assistance with an MCA loan.

**41.**     Plaintiff responded by telling them "I'm not interested, don't call me again!" and

disconnected the call.

**42.**     Call #2, DNC Request #2, on June 07, 2023, at 9:33 AM Plaintiff received a call from

561-736-1621. Defendant's agent from Call #1, *See Paragraph 41*, called back and asked why

Plaintiff hung up the phone. Plaintiff responded by telling him "stop calling!", and hung up the

phone again.

**43.**     Calls #3-6, Plaintiff received four (4) calls from Defendant Resolve all starting the same

way as Call #1, *See Paragraph 34*, each time Plaintiff hung up the phone after hearing what the

call was about without bothering to respond to the agent.

**44.**     Call #7, See Table A, on July 20, 2023, at 4:56 PM Plaintiff received a call from 915-

499-8419. Plaintiff answered with "hello" and was greeted by an agent of Defendant Resolve.

**45.**     Out of frustration with the numerous calls Plaintiff received over the past few weeks, he

engaged the agent for the purpose of identifying the party(s) responsible for the calls.

**46.**     Plaintiff was eventually transferred to Leo who sent him documents from another client

via pictures through his personal cell phone, as a mock contract that Plaintiff would receive.

**47.**     Later in the evening on July 20, 2023, Plaintiff received two emails directly from Leo

with a link to a contract with Defendant Resolve.

**48.**     On July 21, 2023, Plaintiff received more documents confirming the identity of

Defendant Resolve.

**49.**     Table A below displays the calls received from Defendant Resolve's agent Eastern

Financial.

**50.**     **Table A**

| No. | Date | Time | Caller ID | Notes |
|-----|------|------|-----------|-------|
| 1 | Jun 07, 2023 | 9:32 AM | (561) 736-1621 | DNC Request #1 |
| 2 | Jun 07, 2023 | 9:33 AM | (561) 736-1621 | DNC Request #2 |
| 3 | Jul 06, 2023 | 11:14 AM | (915) 499-8416 | Hung up |

| No. | Date | Time | Caller ID | Notes |
|-----|------|------|-----------|-------|
| 4 | Jul 10, 2023 | 4:42 PM | (915) 499-8418 | Hung up |
| 5 | Jul 13, 2023 | 9:01 AM | (915) 499-8416 | Hung up |
| 6 | Jul 20, 2023 | 3:28 PM | (915) 499-8419 | Hung up |
| 7 | Jul 20, 2023 | 4:56 PM | (915) 499-8419 | Spoke with Leo, and received documents via text and email |

**51.**     Each and every solicitation call from Defendant Resolve after June 07, 2023, at 9:32 AM was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendant Resolve on June 07, 2023, at 9:32 AM.

**52.**     Each and every call phone call between June 07, 2023, at 9:33 AM, and July 20, 2023, was a knowing and willful violation as Plaintiff had informed Defendant Resolve's agent Eastern Financial's telemarketer he wasn't interested and to stop calling.

**53.**     Plaintiff did not have a preexisting established business relationship with Defendant Resolve, had never applied for Resolve's services, nor did Plaintiff consent to the direct solicitation calls sent to his cell phone.

**54.**     Defendant Resolve placed multiple unauthorized phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)

**55.**     Defendant Resolve knew or should have known that its conduct would violate the TCPA and its regulations because Resolve received a DNC request from Plaintiff on June 07, 2023, at 9:32 PM, and Plaintiff has been on the Nation Do Not Call registry since December 2007.

**56.**     Plaintiff did not provide his phone number to Defendant Resolve at any point.

**57.**     Through information and belief, Defendant Resolve did not have a do-not-call

policy while Eastern Financial sent Plaintiff the calls on their behalf.

**58.**     No emergency necessitated the alleged calls.

**59.**     Plaintiff has limited data storage capacity on his cellular telephone. Incoming

telemarketing calls consumed part of this capacity.

### VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

**60.**     Defendant Resolve's agent Eastern Financial initiated the phone calls alleged herein and

is a "seller" under the Texas Business and Commerce Code because it used an overseas

marketing company to make telephone solicitation on its behalf and had them call Plaintiff in

this case.

**61.**     Under TCBB 302.302 "a person makes a telephone solicitation if the person effects or

attempts to effect a telephone solicitation."

**62.**     The actions of Defendant Resolve through Eastern Financial violated the Texas Business

and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without

having a registration certificate and bond on file with the Texas Secretary of State.

**63.**     Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

**64.**     The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

**65.**     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

66. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## VICARIOUS LIABILITY OF DEFENDANT RESOLVE FOR PHONE CALLS PLACED BY EASTERN FINANCIAL

67. Defendant Resolve is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as Independence. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

68. Resolve markets MCA debt relief services through direct telephone solicitation by its hired telemarketers and agent Eastern Financial, who act on its behalf. Eastern Financial transfers live, hot leads to Resolve and Resolve accepts the leads. Eastern Financial was Resolve's agent when it made the prohibited calls on behalf of, and with the actual authority from Resolve, pursuant to a contract that governs Eastern Financial's telemarketing for Resolve.

69. Resolve directs, controls, authorizes, and pays Eastern Financial to generate live-transfer leads for Defendant Resolve through telephone solicitation. Moreover, it requires, authorizes, or at least permits Eastern Financial's telemarketers to solicit explicitly for MCA debt relief services.

70. Resolve sets the criteria for qualifying leads, which Eastern Financial must follow, and Eastern Financial live-transfers leads qualified on those criteria exclusively to Resolve.

71. Eastern Financial's telemarketers are Resolve's associates and do nothing to disturb the impression that Eastern Financial's telemarketers work for and speak and act on behalf of, Resolve.

12

**72.**     From Eastern Financial's telemarketer's initial call through the last call received by Plaintiff, Resolve's MCA debt relief solicitations constitute a singular, coordinated marketing effort devised, authorized, directed, and controlled by Resolve, the principal, with Eastern Financial acting as Resolve's agent.

**73.**     Eastern Financial, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Resolve's criteria, and then live-transferred Plaintiff to Resolve's advisor to continue marketing MCA debt relief services.

**74.**     Through information and belief Defendant Resolve hired an offshore telemarketer to make solicitation phone calls on behalf of Resolve and that company is Eastern Financial.

### DEFENDANT GRAFMAN IS PERSONALLY LIABLE

**75.**     "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985)

**76.**     The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable."  *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity."  *Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp*., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

**77.**     Quoting Texas v. American Blastfax:

13

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

78.     The Same Court held that corporate officers were also personally liable for DTPA

violations:

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

79.     At all times material to the Complaint Defendant Grafman has formulated, directed,

controlled, and had the authority to control, and participated in the acts and practices set forth in

this Complaint.

80.     Defendant Grafman is the principal director and operator of Defendant Resolve and

directed his employees, agents, salespersons, and solicitors to make TCPA-violating text messages to solicit erectile dysfunction pills.

81.     Defendant Grafman approved the telephone marketing scripts and directed the phone calls be sent to consumers on the National Do Not Call list.

82.     Defendant Grafman is not an innocent bystander, but the mastermind that schemed, planned, directed, initiated, and controlled the fraudulent behavior

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

83.     Defendants Resolve and Paul's calls through Eastern Financial harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

84.     Defendants Resolve and Paul's calls through Eastern Financial harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

85.     Defendants Resolve and Paul's calls through Eastern Financial harmed Plaintiff by intruding upon Plaintiff's seclusion.

86.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

87.     The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to

15

communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

<u>**CAUSES OF ACTION:**</u>

<u>**COUNT ONE:**</u>

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

**88.**     Plaintiff incorporates the preceding paragraphs 1-87 as if fully set forth herein.

**89.**     The foregoing acts and omissions of Defendants Resolve and Paul and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

**90.**     Resolve and Paul and/or their agents, called Plaintiff's private residential telephone which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**91.**     Plaintiff was statutorily damaged at least seven (7) times under 47 U.S.C. § 227(c)(3)(F) by Defendants Resolve and Paul as a result of Eastern Financial's calls described above, in the amount of $500 per call.

**92.**     Plaintiff is entitled to an award of at least $500 in damages for each such

violation. 47 U.S.C. § 227(c)(5)(B).

**93.**     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).


### COUNT TWO:
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (Against All Defendants)

**94.**     Plaintiff incorporates the foregoing paragraphs 1-87 as if fully set forth herein.

**95.**     Defendants Resolve and Paul and/or their affiliates or agents made at least seven (7) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

**96.**     As a result of Defendant Resolve and Defendant Paul and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

**97.**     As a result of Defendants Resolve and Paul and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code 302.302(d).


### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against Defendants Resolve and Paul jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

17

B.      A declaration that actions complained of herein by Defendants violates the
TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from
engaging in the unlawful conduct set forth herein.

D.      An award of $1500 per call in statutory damages arising from the TCPA 47
U.S.C §227(c) intentional violations jointly and severally against the corporations for
seven (7) calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas
Business and Commerce code 305.053 intentional violations jointly and severally
against the corporation for seven (7) calls.

F.      An award of $5,000 in statutory damages arising from violations of the
Texas Business and Commerce code 302.101 intentional violations jointly and
severally against the corporation for seven (7) calls

G.      An award to Mr. Callier of damages, as allowed by law under the TCPA
and Texas Law.

H.      An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law
and equity.

I.      Such further relief as the Court deems necessary, just, and proper.

August 30, 2023,

                                        Respectfully submitted,


                                        _____
                                        Brandon Callier
                                        Plaintiff, Pro Se

18

6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604
callier74@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

August 30, 2023,                                    Respectfully submitted,

_____
Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604
Callier74@gmail.com