IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| BRANDON CALLIER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NO. EP-23-CV-375-KC |
| | § | |
| UNIFIED HEALTH, LLC, | § | |
| | § | |
| Defendant. | § | |

## ORDER

On this day, the Court considered Defendant Unified Health, LLC's Motion to Dismiss ("Motion"), ECF No. 16.  For the reasons set forth below, the Motion is **DENIED**.

## I.        BACKGROUND

This case involves Plaintiff Brandon Callier's allegations that he received a series of unwanted telemarketing calls soliciting Defendant's health insurance services.  *See generally* 1st Am. Compl. ("FAC"), ECF No. 14.

### A.        Callier's Allegations

The following allegations are taken from the FAC.  Callier's personal cell phone number ending in -4604 has been registered on the National Do-Not-Call Registry since December 2007.  FAC ¶ 24.  Between July 28 and October 28, 2023, Callier received nine phone calls from a telephone number ending in -4020 and displaying "SILVERSCRIPT" on Callier's caller identification.  FAC ¶¶ 28–30, 32, 34, 36, 41, 44, 50.  Callier did not answer the first call, and the second call dropped after only three seconds.  FAC ¶¶ 28–29.  Callier answered the next four calls, which were placed on August 25, September 15, and twice on September 27.  FAC ¶¶ 30,

32, 34, 36.  Each time, Callier told the caller that he did not have Medicare and asked them not to call again.  FAC ¶¶ 31, 33, 35, 37.

Also on September 27, Callier called the -4020 number back "to investigate" because he "was curious about who was repeatedly calling [him] and ignoring his do-not-call requests." FAC ¶ 38.  Callier spoke to a representative named Azelis, who gave him an address for their company's website, https://www.unifiedhealth.com, from which Callier determined that the calls were being placed by Unified Health.  FAC ¶¶ 39–40.

Then on October 4, Callier answered another call from the same phone number, informed the telemarketer that he was not interested, and hung up.  FAC ¶¶ 41–42.  The next day, Callier sent a demand letter via email to Unified Health, which also included a do-not-call request.  FAC ¶ 43.  Callier's email tracking service shows that the email was read multiple times.  *Id.*  Seven days later, on October 12, Callier filed this lawsuit.  Compl., ECF No. 4.  He then received two missed phone calls from the -4020 number on October 28.  FAC ¶¶ 44, 51 ("Table A").

The nine phone calls caused Callier annoyance, confusion, frustration, irritation, and mental anguish.  FAC ¶¶ 81–82.  He felt harassed when the calls continued after he had repeatedly requested that they stop.  FAC ¶ 82.  The calls also used at least some portion of Callier's phone's limited data storage capacity.  FAC ¶ 58.  The phone that received the calls is the cell phone that Callier uses "for personal, family, and household use," in lieu of a residential landline.  FAC ¶ 109.  He has not had a landline for over seventeen years.  *Id.*  He uses the phone as his primary means of communication with friends and family, for navigation, email, and setting timers.  *Id.*  He does not use the phone primarily for business.  *Id.*

Callier alleges, on information and belief, that Unified Health does not maintain an internal do-not-call policy and consequently does not train its employees and agents on the use of

2

such a policy.  FAC ¶¶ 57, 60–61.  On December 6, 2023, Callier requested that Unified Health provide him a copy of its do-not-call policy.  FAC ¶ 53.  On December 7, counsel for Unified Health responded to Callier and refused to do so.  FAC ¶ 54.  Callier insisted that Unified Health was obligated by federal law to make the policy available upon request and reiterated his request, but Unified Health did not provide it.  FAC ¶¶ 55–56.

Callier further alleges that Unified Health has never had a telephone solicitation registration certificate and bond on file with the Texas Secretary of State.  FAC ¶¶ 74–76. Callier explains that he came to this conclusion after, on December 5, 2023, he searched the Texas Secretary of State's Telephone Solicitors Search database for initial, closed, pending, renewal, and suspense registrations and found no results for Unified Health.  FAC ¶¶ 69–73.

**B.      The Parties' Competing Evidence**

The parties submit conflicting evidence regarding (1) whether Callier or someone on his behalf initially solicited the telephone calls that form the basis for this lawsuit and (2) whether Callier requested that Unified Health stop calling him during some of the calls at issue.

**1.      Unified Health's Evidence**

Unified Health offers several pieces of evidence, including the Declaration of Whittney Hunsaker, ECF No. 16-1.  Hunsaker avers that she has been Unified Health's Executive Vice President since February 2018.  *Id.* ¶ 1.  She declares that Unified Health partners with PlanEnroll, an entity that "connect[s] individuals looking for health coverage and other products with" providers of health insurance products, like Unified Health.  *Id.* ¶¶ 2–4.  PlanEnroll allows potential customers to submit a form on its website to request a call from an insurance agent.  *Id.* ¶ 4.

3

Hunsaker further attests that Unified Health's business records show that it received a communication from PlanEnroll indicating that Elston Tatum of Tyler, Texas, submitted such a request on July 13, 2023.  *Id.* ¶ 5.  Tatum listed Callier's -4604 number as his call-back number. *Id.*  Unified Health placed a series of phone calls to that phone number, per the information it had received from PlanEnroll.  *Id.* ¶¶ 6–7.  Unified Health's records show that while the -4604 number answered two of those calls, "no conversation occurred" during any of them.  *Id.* ¶ 8.

On September 27, Unified Health answered an incoming call from the -4604 number, during which the caller identified himself as "Brandon" and stated that his father has Medicare. *Id.* ¶ 9.  The caller stated that his father "would be interested in speaking with" a Unified Health representative later that day.  *Id.* ¶ 10.  The caller never asked Unified Health not to call him— quite the opposite, the caller expressed interest in Unified Health's services on his father's behalf.  *Id.*  Hunsaker attaches to her Declaration a transcript prepared from a recording of the phone call.  *Id.* ¶ 11.  The Transcript, ECF No. 16-2, aligns with Hunsaker's account of the conversation.

Unified Health also requests that the Court take judicial notice of records from other TCPA lawsuits filed by Callier in the Western District of Texas and the Eastern District of North Carolina; the United States Department of Health and Human Services' website's question-and-answer page on Medicare eligibility; and the "Our Team" page of Aero Tax Services' website, showing the company's employees as Brandon Callier and Carlton Tatum.  *See* Mot. 2 & n.1; *see generally* Request Judicial Notice, ECF No. 16-3; Mot. Ex. E ("Our Team"), ECF No. 16-8. Unified Health notes that in a complaint filed with the Eastern District of North Carolina, Callier alleged that he received a phone call in North Carolina on August 11, 2023, at 2:38 p.m., the same day he alleges that he received a phone call in Texas at 12:08 p.m.  Mot. 10.

4

### 2.      Callier's Evidence

For his part, Callier submits evidence that tends to corroborate his own allegations and dispute Unified Health's evidence.  In his own Declaration of Brandon Callier, ECF No. 19-1, he acknowledges that Elston Tatum is his father, *id.* ¶ 20.  However, he avers that neither he, Tatum, "nor anyone else acting on our behalf requested that I receive the complained of calls, including by submitting our information online."  *Id.*  Callier repeatedly attests that he did not solicit the calls at issue.  *See id.* ¶ 26 ("To be clear, I do nothing to precipitate the illegal calls which are placed to me.  I do not want these communications, but they continue to be placed to me.  They are highly annoying and disruptive."); *id.* ¶ 29 ("I have never proactively created or found TCPA claims nor entrapped businesses.  I do not welcome nor invite these illegal calls and have taken measures for them to stop, including by placing my number on the Do-Not-Call Registry and holding those who call me accountable for their actions.").

Callier also declares that he did, in fact, answer the phone and tell a Unified Health associate not to call him on the third, fourth, fifth, and sixth times that they called, as alleged in his FAC.  *Id.* ¶¶ 10–13.  He provides his own phone records, which corroborate his account of the length of each call.  *Id.* ¶ 14; Call Record Excerpts, ECF No. 19-3.  As for the call that Callier placed to Unified Health on September 27, he only contacted them in order to determine the caller's identity.  Callier Decl. ¶¶ 15–17.  He "play[ed] along[,] . . . including providing [his] father's name and stating that he was on Medicare, to receive actionable information regarding the identity of the caller."  *Id.* ¶ 17.  Callier states that "[a]t no part of that call did I provide any consent to future calls."  *Id.*  On October 4, when Unified Health called again, he reiterated his do-not-call request.  *Id.* ¶ 18.

Finally, Callier attests that he was in Texas on August 11.  *Id.* ¶ 25.  He explains that he mistakenly and inadvertently alleged in a different lawsuit that he was in North Carolina that day, because he is in the process of moving to North Carolina and had rented an apartment there "[a]t various points in June through October of 2023."  *Id.* ¶¶ 22–25.

### 3.    Procedural History

Callier initiated this lawsuit on October 12, 2023.  Compl.  Unified Health filed its first Motion to Dismiss, ECF No. 10, after which Callier filed the FAC.  Unified Health then filed this Motion, principally arguing under Rule 12(b)(1) that Callier lacks Article III standing to bring this lawsuit because he has suffered no cognizable injury.  Mot. 6–11.  Alternatively, Unified Health argues under Rule 12(b)(6) that Callier has failed to state plausible claims for relief.  Mot. 12–16.  Because Unified Health raised jurisdictional arguments for dismissal, the Court stayed all discovery in this matter pending resolution of the Motion.  Jan. 10, 2024, Order 1–2, ECF No. 18.  Callier filed a Response, ECF No. 19, and Unified Health filed a Reply, ECF No. 20.

## II.    DISCUSSION

### A.    Standard

#### 1.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction.  *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005); *Peoples Nat'l Bank v. Off. of the Comptroller of the Currency of the U.S.*, 362 F.3d 333, 336 (5th Cir. 2004) (citing *Hashemite Kingdom of Jordan v. Layale Enters., S.A.*, 272 F.3d 264, 269 (5th Cir. 2001)).  Without jurisdiction conferred by statute or the Constitution, federal courts lack the power to adjudicate claims.  *Exxon Mobil*, 545 U.S. at 552; *Peoples Nat'l Bank*, 362 F.3d at 336 (citing *Hashemite Kingdom*, 272 F.3d at 270).

A party may challenge a district court's subject-matter jurisdiction by filing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  A federal court must consider a Rule 12(b)(1) motion to dismiss before any other challenge because a court must have subject-matter jurisdiction before determining the validity of a claim.  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)).  The party asserting jurisdiction "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (first citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995); and then citing *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).

### 2.        Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) challenges a complaint on the basis that it fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, "the court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Though a complaint need not contain "detailed" factual allegations, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

"[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation and internal quotation marks omitted); *Colony Ins. Co.*, 647 F.3d at 252. Ultimately, the "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B.      Analysis

As stated above, Unified Health moves to dismiss Callier's claims on both jurisdictional and nonjurisdictional grounds. Mot. 1–2. Because it concerns the Court's power to decide the case, "[j]urisdiction is always first." *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) (quoting *Arulnanthy v. Garland*, 17 F.4th 586, 592 (5th Cir. 2021)); *see also United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Thus, the Court must first assess Unified Health's argument that the Court lacks subject-matter jurisdiction because Callier has not suffered an injury sufficient to support Article III standing. *See* Mot. 6–11.

### 1.      Rule 12(b)(1)

The crux of Unified Health's jurisdictional argument is that Callier was not injured because he purposely solicited the very telephone calls that form the basis for this lawsuit. *See* Mot. 8. In support of that argument, Unified Health relies on evidence of (1) Callier's prolific history of TCPA litigation, including his inconsistent allegations across lawsuits regarding where he was when he received phone calls; (2) Unified Health's call records, which show that Callier

8

expressed an interest in their products and did not make any do-not-call requests; and
(3) information Unified Health received from PlanEnroll showing that someone had requested a
phone call to Callier's phone number under his father's name.  Mot. 8–11.  For his part, Callier
submits evidence and authority showing that (1) his litigation history in and of itself does not
warrant a finding that he lacks standing, and he has reasonable explanations for any
inconsistencies in his pleadings; (2) Unified Health's call records are incorrect; and (3) neither he
nor anyone else submitted a call request to PlanEnroll on his behalf.  Resp. 5–15.  In short, there
is a fact dispute.

Ordinarily, when resolving motions to dismiss for lack of subject-matter jurisdiction,
courts may receive and consider evidence and even resolve disputes over jurisdictional facts.  *In
re S. Recycling, L.L.C.*, 982 F.3d 374, 379 (5th Cir. 2020).  However, "when the issue of
jurisdiction is intertwined with the merits, district courts should 'deal with the objection as a
direct attack on the merits of the plaintiff's case under either Rule 12(b)(6) or Rule 56.'"  *Id.*
(quoting *M.D.C.G. v. United States*, 956 F.3d 762, 768–69 (5th Cir. 2020)).  The questions are
intertwined "where issues of fact are central both to subject matter jurisdiction and the claim on
the merits."  *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004).  Certainly, injury for
standing purposes and injury for purposes of stating a particular claim entail distinct legal
questions, and Article III "'standing in no way depends on the merits of the plaintiff's' claims."
*Pierre v. Vasquez*, No. 20-51032, 2022 WL 68970, at *2 (5th Cir. Jan. 6, 2022) (quoting *Warth
v. Seldin*, 422 U.S. 490, 500 (1975)).  Nevertheless, in some cases, the same facts are central to
assessing both standing and the merits.  *See, e.g.*, *Hunsinger v. Dynata LLC*, No. 22-cv-136,
2023 WL 2377481, at *4 (N.D. Tex. Feb. 7, 2023) (finding, in a TCPA case, that standing and
merits were intertwined) (collecting cases).

This is one such case.  If Callier received unwanted phone calls from Unified Health, then he suffered an injury sufficient for standing purposes.  *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 690 (5th Cir. 2021) (holding that receipt of a single unsolicited text message suffices to establish cognizable injury in fact for Article III purposes in TCPA context); *accord Susinno v. Work Out World Inc.*, 862 F.3d 346, 348, 351–52 (3d Cir. 2017).  And there is ample persuasive authority to support the conclusion that if Callier purposely solicited or otherwise desired to receive the calls from Unified Health in order to drum up TCPA litigation, then he did not suffer a cognizable injury.  *See Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 802 (W.D. Pa. June 24, 2016) ("Because Plaintiff has admitted that her only purpose in purchasing her cell phones and minutes is to receive more calls, thus enabling her to file TCPA lawsuits, she has not suffered an economic injury." (citations omitted)); *see also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990–91 & n.9 (9th Cir. 2023) (suggesting without deciding that someone who solicited the calls at issue in a TCPA case would not have standing).

The same question—whether Callier asked Unified Health to call him—also goes to the merits of one or more of his claims.  Callier's first claim is for violations of 47 U.S.C. § 227(c)(3)(F) and 47 C.F.R. 64.1200(c)(2).  FAC ¶¶ 110–15.  These provisions prohibit the initiation of telephone solicitations to a phone number registered on the National Do-Not-Call Registry.  But "telephone solicitation" is defined to exclude "a call or message (A) to any person with that person's prior express invitation or permission, [or] (B) to any person with whom the caller has an established business relationship."  47 U.S.C. § 227(a)(4).

Thus, the jurisdictional issues raised by Unified Health are intertwined with the merits.  The same "issue[] of fact"—namely, whether Callier solicited the calls—is "central both to subject matter jurisdiction and the claim on the merits."  *See Montez*, 392 F.3d at 150.

10

Therefore, the Court cannot weigh the parties' competing evidence but must instead "assume jurisdiction and proceed to the merits." *Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1030 (5th Cir. 2022) (quoting *Montez*, 392 F.3d at 150).

Before proceeding to the merits, however, the Court cautions the parties that their directly conflicting sworn statements raise concerns.  If either party has knowingly misrepresented material facts to the Court under penalty of perjury, they may face severe sanctions.  But because such issues are intertwined with the ultimate merits of Callier's claims, the Court defers the question of sanctions until the completion of litigation.  *See, e.g.*, *D'Ottavio v. Slack Techs.*, No. 18-cv-9082, 2019 WL 1594270, at *6 (D.N.J. Apr. 15, 2019); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1337.1 & n.22 (4th ed. 2023) (collecting cases).

###             2.      Rule 12(b)(6)

Callier pleads three claims: (1) for violations of the TCPA by way of the Federal Communications Commission's ("FCC") Do-Not-Call Registry regulations (the "Do-Not-Call Claim"); (2) for failure to obtain a telephone solicitation registration certificate in violation of Section 302.101 of the Texas Business and Commerce Code (the "Solicitation Registration Claim"); and (3) for failure to maintain a Do-Not-Call policy and train its telemarketers on the use of that policy as required by FCC regulations (the "Do-Not-Call Policy and Training Claim").  FAC ¶¶ 110–23.  Unified Health argues that Callier's first and second claims fail for independent reasons.  Mot. 12.  But Unified Health makes no Rule 12(b)(6) arguments for dismissal of Callier's third claim.[1]  *See generally* Mot.; Reply.

---

[1] Indeed, Unified Health appears unaware of Callier's third claim, arguing that Callier "asserts two claims" and that "[b]oth claims fail."  Mot. 12.  In any event, to the extent that Unified Health intends its

### a.    Do-Not-Call Claim

Unified Health argues that Callier's Do-Not-Call Claim must be dismissed because he does not adequately allege that his cell phone is a residential phone line.  Mot. 13–14.  To prevail on his Do-Not-Call Claim, Callier must demonstrate that Unified Health is responsible for telephone solicitations that were made to his phone, which had been registered in the National Do-Not-Call Registry for at least thirty-one days.  47 U.S.C. § 227(c)(3)(F); 47 C.F.R. § 64.1200(c)(2).  Unlike other portions of the TCPA, the statute cabins the applicability of regulations implemented under § 227(c) to "residential telephone subscribers" only.  *Strange v. ABC Co.*, No. 19-cv-1361, 2021 WL 798870, at *3–4 (W.D. La. Mar. 1, 2021); *see also* 47 C.F.R. § 64.1200(c)(2) (prohibiting calls to "[a] residential telephone subscriber" on the National Do-Not-Call Registry).  Some courts have concluded that this language categorically excludes claims based on calls to cell phones, reasoning that no cell phone can be a residential line.[2] *Strange v. Doe #1*, No. 19-cv-1096, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020) (collecting cases).  Other courts have reasoned that cell phones can be residential, so long as they are used for residential purposes.  *See Callier v. Momentum Solar LLC*, No. EP-23-cv-377-KC-RFC, 2024 WL 1813446, at *2–3 (W.D. Tex. Apr. 25, 2024) (collecting cases), *adopted*, 2024 WL 2120257 (May 10, 2024); *ABC Co.*, 2021 WL 798870, at *4 (collecting cases).

---

argument for dismissal of the Do-Not-Call Claim to apply also to the Do-Not-Call Policy and Training Claim, it fails as to both claims for the same reasons.

[2] Indeed, this Court once rejected § 227(c) claims on the grounds that the "[p]laintiff [did] not cite—and the Court [was] not aware of—any authority that ha[d] found [another regulation promulgated under § 227(c)] applicable to cellphones."  *Callier v. GreenSky, Inc.*, No. 3:20-cv-304-KC, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021).  That conclusion was confined to and informed by the plaintiff's briefing and allegations in that case.  *See id.*  To the extent that *Greensky* stands for a broader holding that the residential telephone regulations can never apply to calls made to cell phones, it was incorrectly decided for the reasons stated in this Order.

The Court finds the latter view persuasive for at least four reasons.  First, it appears to represent a majority position.  *Tsolumba v. SelectQuote Ins. Servs.*, No. 22-cv-712, 2023 WL 6146644, at *5 n.3 (N.D. Ohio Sept. 20, 2023) ("This Court therefore joins the majority of courts throughout the country who have held that cell phones like [plaintiff's] are entitled to the TCPA's protection as residential telephones." (quoting *Tessu v. AdaptHealth, LLC*, No. 23-364, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023))).  Second, the Fifth Circuit has rejected a narrow reading of "residential telephone subscribers" in a related TCPA context.  *See Cranor*, 998 F.3d at 689–91, 693.  Third, the FCC has long maintained that cell phones are presumptively residential, for purposes of the TCPA's Do-Not-Call Registry provisions.  *Myrick v. Adapthealth, LLC*, No. 22-cv-484, 2023 WL 5162396, at *3 (E.D. Tex. June 26, 2023) (citing *In re Rules & Reguls. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14039 (June 26, 2003) ["2003 FCC TCPA Order"]), *adopted*, 2023 WL 4488848 (July 12, 2023).  Finally, many households no longer maintain a residential landline.  Instead, they use cell phones for residential purposes.  Thus, construing "residential" to entirely exclude cell phones would be inconsistent with the TCPA's core purpose of protecting people from harassing telephone calls in their homes.  *See Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022) (citing 2003 FCC TCPA Order).

Here, Callier alleges that he uses the cell phone at issue "for personal, family, and household use," in lieu of a residential landline, which he has not had in over seventeen years.  FAC ¶ 109.  Callier does not use the phone primarily for business purposes, but instead, for various personal activities including communication with friends and family, navigation, email, and setting timers.  *Id.*  These allegations more than suffice to "plead facts showing the cell phone is used for residential purposes."  *See ABC Co.*, 2021 WL 798870, at *4 (citing

*Cunningham v. Rapid Cap. Funding, LLC/RCF*, No. 16-cv-2629, 2017 WL 3574451, at *3

(M.D. Tenn. July 27, 2017)); *see, e.g.*, *Guadian v. United Tax Defense LLC*, No. EP-23-cv-349-

KC-RFC, 2024 WL 140249, at *5 (W.D. Tex. Jan. 12, 2024) (recommending granting motion

for default judgment as to Do-Not-Call claim where the plaintiff alleged he used the cell phone

"for personal, family, and household use, and as the primary way that he contacts friends and

family").  Accordingly, the Motion is denied as to Callier's Do-Not-Call Claim.

### b.        Solicitation Registration Claim

Unified Health next argues that Callier's Solicitation Registration Claim must be

dismissed because there is no private right of action to enforce section 302.101 of the Texas

Business and Commerce Code directly.  Mot. 14–16.  Instead, section 302.303 provides that a

violation of section 302.101 constitutes "a false, misleading, or deceptive act or practice" under

the Texas Deceptive Trade Practices–Consumer Protection Act ("DTPA") and is enforceable by

private persons through the DTPA.  Tex. Bus. & Com. Code § 302.303(a)–(b).  A DTPA claim,

in turn, is only viable if the plaintiff has suffered "economic damages or damages for mental

anguish."  Tex. Bus. & Com. Code § 17.50(a).

Unified Health argues that Callier's claim fails because he cannot show that Unified

Health's failure to register with the State of Texas as a telemarketer caused Callier to suffer any

damages of the kind required by the DTPA.  Mot. 14–16.  But Unified Health misframes the

question.  As other courts have recognized, to state a claim under section 302.101, a plaintiff

must plausibly allege that they suffered economic damages or mental anguish as a result of the

"recurring phone calls" placed by a telemarketer without a registration certificate—not as a result

of the telemarketer's failure to register, itself.  *See Johnson v. Palmer Admin. Servs., Inc.*,

No. 22-cv-121, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022) (collecting cases).  Indeed,

14

it is difficult to conceive of how someone could be injured directly by a business' failure to register with the State.  Courts have found that allegations of "annoyance, intrusion on privacy, and wasted time" suffice to proceed past the pleading stage.  *Id.* (quoting *Marquis v. OmniGuide, Inc.*, No. 09-cv-2092, 2011 WL 321112, at *7 (N.D. Tex. Jan. 28, 2011)).

Callier alleges that he "was annoyed, confused, and suffered mental anguish, frustration, and irritation" as a result of the phone calls at issue.  FAC ¶ 82.  Elsewhere, he alleges that has suffered "reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of [his] cell phone."  FAC ¶ 108.  Callier thus adequately alleges mental anguish.  *See Johnson*, 2022 WL 17546957, at *9.  Unified Health's motion is denied as to the request to dismiss Callier's section 302.101 claim.[3]

## III.   CONCLUSION

For the foregoing reasons, the Motion, ECF No. 16, is **DENIED**.

**IT IS FURTHER ORDERED** that the stay of all discovery and deadlines in this matter is **LIFTED**.

**IT IS FURTHER ORDERED** that the parties shall meet, confer, and submit a joint report of parties' planning meeting as specified in the Court's Standing Order on Pretrial Deadlines **no later than August 6, 2024.**

---

[3] It is premature at this stage of the proceedings to determine whether Callier is limited to recovering only economic and mental anguish damages under section 302.101.  Some courts have permitted private plaintiffs to recover the $5,000 civil penalty provided in section 302.101, as well.  *See Cacho v. Live Transfers, Inc.*, No. EP-23-cv-372-DCG, 2024 WL 3103324, at *5 (W.D. Tex. June 24, 2024) (collecting cases).  The Court makes no finding regarding the scope of damages at this juncture.

**SO ORDERED**.

SIGNED this 15th day of July, 2024.

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE